## JAMES BLACKLAWS

*v.*

## ROBERT MILNE *et al.*

1. DESCENTS—*illegitimate children.* It is a rule of construction that, *prima facie*, the term "children" means lawful children, and the statute of descents, by which the property of an intestate is made to descend to and among the children and their descendants, has reference to lawful children only, and does not do away with the common law rule, which prevents illegitimate children from inheriting anything.

2. Prior to the adoption of the statute of 1872, illegitimate children could inherit from their mother only in case she was unmarried.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. N. C. WARNER, for the appellant.

Mr. WILLIAM LATHROP, for the appellees.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

The forty acres of land in controversy, situated in Winnebago county, in this State, was purchased from the United States, in the year 1851, by Robert Milne and William Milne, in their

names, with the money of their mother, Margaret Milne. She died intestate, in the year 1853, leaving several children, in one of whom, Margaret Merchant, the wife of James Merchant, the equitable title of Margaret Milne became vested. Margaret Merchant died intestate in 1863, and James Merchant, her husband, in 1874. Margaret Merchant left, surviving her, five children, two of whom were illegitimate, of which last class is James Blacklaws, the complainant in this suit. After the death of James Merchant, Robert and William Milne, the trustees under the resulting trust in favor of their mother, Margaret Milne, executed a quitclaim deed of their interest in the land to the three legitimate children of Margaret Milne, then Margaret Merchant.

This was a bill filed by James Blacklaws, one of the two illegitimate children of Margaret Merchant, claiming a one-fifth interest in the land as one of the five children she left surviving her, asking to have set aside the said quitclaim deed, and for a partition of the premises. The circuit court, on hearing, upon the pleadings and proofs, found that the complainant had no right or interest in the land, and dismissed the bill. The complainant took this appeal from the decree.

The chief question presented by the record is, whether, previously to the statute of 1872 declaring that an illegitimate child shall be heir of its mother, the illegitimate child of a married woman was capable, in law, of inheriting the estate of the deceased mother.

By the common law, the rights which appertained to a bastard were very few, being only such as he could *acquire;* for he could *inherit* nothing, being looked upon as the son of nobody, and sometimes called *filius nullius,* sometimes *filius populi.* 1 Bl. Com. 458. And Mr. Christian, in his note thereto, says, he was considered *filius nullius* with respect to inheritances and successions, though the law took notice of his connection with his natural parents for some other purposes. But it is contended by appellant's counsel that this rule of the common law is superseded by our statute of descents, by which the property of an intestate is made to descend to and among

the *children* and their descendants; that the complainant is the child of his mother, Margaret Merchant, and is embraced within the plain words of the statute; that there is nothing restricting the customary meaning of the word " children;" that it should be allowed to have force, and the positive law of the statute should prevail over the common law rule; and the case of *Heath* v. *White,* 5 Conn. 231, is cited as sanctioning such a construction of the language of the statute. If there were simply the above provision and nothing more, in our statute of descents, previous to 1872, the point urged might be one worthy of consideration, though it is a rule of construction that, *prima facie,* the term " *children* " means lawful children. *Dorin* v. *Dorin,* 13 Eng. Rep. 90, L. R. 7. H. L. 568. But the 53d section of that statute provides, that the illegitimate child or children of any single or unmarried woman shall be deemed able and capable in law to inherit the estate of their deceased mother. This is an implied recognition of the existence of the rule of the common law upon the subject, and of its being in force, and is an abrogation of it to a certain extent, only.

It shows the understanding of the makers of the statute, that " children " did not embrace illegitimate, as well as legitimate children; and that, in order that a particular class of illegitimate children, those of any single or unmarried woman, might be able to inherit from their deceased mothers, it was necessary to go further and make an express provision to that effect. The General Assembly have legislated upon the very subject, expressly providing in what cases illegitimate children may inherit from their mothers; and such must be taken as being all the cases, and that, in all other cases, previous to the statute of 1872, their incapacity to inherit remains as at common law. And the appellant must be held to come within such incapacity, as his mother, Margaret Merchant, died before the passage of the act of 1872—in 1863.

Another claim set up in the bill is, that Margaret Merchant, during her last illness, and in apprehension of death, expressed the wish to make her will, devising the property to all her five

children, and that the trustees, Robert and William Milne, promised to hold the title in trust for them until the death of James Merchant, and then convey to them. The proof manifestly comes far short of establishing any such claim. All that there is of it, taking the competent testimony, is, that Mrs. Merchant said to Robert Milne, that she wanted all her children to share equally in this property after her death, and this not during her last illness, or in apprehension of death, or with any reference to the making of a will, and without any corresponding promise on the part of Robert Milne or his cotrustee. It amounts to nothing more than a verbal will, which is no recognized mode of the valid disposition of real estate.

Perceiving no error in the decree, it is affirmed.

*Decree affirmed.*