---

(No. 14212.—Reversed and remanded.)
CHARLES HARDESTY, Appellee, *vs.* JOSEPH MITCHELL *et al.* Appellants.

*Opinion filed February 22, 1922—Rehearing denied April 6, 1922.*

1. CONSTRUCTION—*words "child," "children" and "issue" ordinarily mean legitimate descendants.* The words "child," "children" and "issue," when used in a statute, will or deed, mean legitimate children or issue, and will never by implication be extended to embrace illegitimate descendants unless such construction is necessary to carry into effect the manifest purpose of the legislature, testator or grantor.

2. DESCENT—*legitimate next of kin, only, are included in fifth clause of section 1 of Statute of Descent.* Terms of kindred when used in a statute include only those who are legitimate unless a different intention is clearly manifest, and the next of kin referred to in the fifth clause of section 1 of the Statute of Descent include only legitimate next of kin.

3. SAME—*the mother cannot inherit from descendants of her illegitimate child.* Section 2 of the Statute of Descent, in regard to inheritance from illegitimates, does not extend the right of the mother to inherit from her illegitimate child so as to give her the right to inherit from the children of such illegitimate child, whether they are legitimate or illegitimate.

4. SAME—*when illegitimate claimant cannot inherit as an heir.* Section 2 of the Statute of Descent, giving an illegitimate child the right to inherit from any person from whom his mother might have inherited, does not give such child the right to inherit as a collateral heir from the legitimate son of his illegitimate half-sister. (*Morrow* v. *Morrow,* 289 Ill. 135, distinguished.)

APPEAL from the Circuit Court of Piatt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

CARL S. REED, and DOBBINS & DOBBINS, for appellants.

3C2—24

THOMAS J. KASTEL, and HERRICK & HERRICK, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Wade H. Mitchell, the owner of 317 acres of land in Piatt county, died intestate on October 17, 1919. He left no wife or descendant and no parent, brother or sister, or descendant of a parent, brother or sister, surviving him. His father had four brothers, two of whom had died leaving children who survived Wade H. Mitchell. A few days after his death his surviving uncles, describing themselves as next of kin and only heirs of Wade H. Mitchell, executed deeds conveying a half interest in the premises to a trustee for the benefit of the children of his uncles who had died. On May 12, 1920, the appellee, describing himself as "Charles Hardesty, commonly known as Charles Tatman," filed a bill for the partition of the land, claiming to be a brother of the half blood of Wade H. Mitchell's mother, Cynthia Hardesty, and entitled to an equal share of the land with the paternal uncles. An answer was filed denying the alleged relationship, and the cause was referred to a master, who reported that both the appellee and Cynthia Mitchell, the mother of Wade H. Mitchell, were illegitimate children of Mary Hardesty; that Cynthia Mitchell died leaving her husband, John B. Mitchell, and her son, Wade H. Mitchell, her only heirs surviving her; that afterward John B. Mitchell died owning the land in question, leaving Wade H. Mitchell his only heir, who thus acquired title to the land. The master found that under the law the appellee was not an heir of Wade H. Mitchell and recommended a decree dismissing the bill. The chancellor sustained exceptions taken to the master's conclusions of law and entered a decree finding the facts the same way but finding the appellee entitled to a one-third interest in the land and awarding partition, from which the defendants have appealed.

The only question is whether the appellee is an heir of Wade H. Mitchell. The facts are undisputed here, and so far as essential are that Cynthia Mitchell and the appellee were illegitimate children of Mary Hardesty. Wade H. Mitchell was a legitimate son of Cynthia. Cynthia died, Mary Hardesty died, and then Wade died leaving two paternal uncles, who were his only heirs unless the appellee, who is an uncle on his mother's side but of illegitimate birth, is entitled to inherit equally with them. The question is entirely one of statutory construction.

At common law a child born out of wedlock was nobody's child. He was without parents, kindred or name. He could have no heirs except his own lineal descendants and could not inherit even from his mother or she from him. The rule of the common law was adopted as the law of this State immediately after its organization, by an act of the legislature approved February 4, 1819, which enacted "that the common law of England, all statutes or acts of the British parliament made in aid of the common law prior to the fourth year of King James I," with three named exceptions, "which are of a general nature and not local to that kingdom, shall be the rule of decision and shall be considered as of full force, until repealed by legislative authority." The rule is therefore in force in Illinois to-day except as it has been changed by statute.

The descent of property in Illinois is regulated wholly by statute. The disability of persons of illegitimate birth to inherit property which existed at common law continued in the State of Illinois until 1829, when by section 47 of the act relative to wills and testaments it was provided that the illegitimate child or children of an unmarried woman should not be disinherited on account of the illegitimacy, but they and each of them, and their descendants, should be deemed able and capable in law to take and inherit the estate of their deceased mother in equal parts among them, to the exclusion of all other persons. (Laws of 1829,

p. 207.)   In 1853 an act concerning the descent of property was passed which established the rule of descent of all property of any bastard or illegitimate person dying intestate, as follows:   The property should descend to and vest in the widow or surviving husband and children; in case of no children or descendants, then the whole property to descend to and vest in the widow or surviving husband; in case of no widow, husband or descendant, to the mother one-half and the other half to be equally divided between her children and their descendants, the descendants of a child taking the share of his deceased parent or ancestor; in case there were no heirs as above provided, then the property should pass to and vest in the next of kin of the mother of such illegitimate person in the same manner as the estate of a legitimate person under the laws then in force pass to next of kin.   (Laws of 1853, p. 255.)

This was the condition of the law until the passage of the act of 1872 in regard to the descent of property, which is chapter 39 of the Revised Statutes.   Section 1 of that act provides for the descent of the property of proprietors of legitimate birth, and section 2 for the descent of the property of proprietors of illegitimate birth.   The first clause of section 2 of this act provides that an illegitimate child shall be heir of its mother and any maternal ancestor and of any person from whom its mother might have inherited if living, and the lawful issue of an illegitimate person shall represent such person and take by descent any estate which the parent would have taken if living.   In order to inherit from Wade H. Mitchell it is therefore essential for the plaintiff to establish that his mother, if living, might have inherited from Wade.   Wade was himself legitimate, and the descent of his property is regulated by the fifth clause of section 1 of the act in regard to the descent of property, which applies in case there is no child or descendant of the intestate, and no parent, brother or sister or descendant of such parent, brother or sister, and no

widow or surviving husband, and provides that in such case
the estate shall descend in equal parts to the next of kin of
the intestate in equal degree. The next of kin referred to
means legitimate next of kin. The words "child or chil-
dren," when used in a statute, will or deed, mean legitimate
child or children, and will never be extended, by implica-
tion, to embrace illegitimate children unless such construc-
tion is necessary to carry into effect the manifest purpose of
the legislature, testator or grantor. (*Blacklaws* v. *Milne*,
82 Ill. 505; *Orthwein* v. *Thomas*, 127 id. 554; *McDonald*
v. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.*
144 Ind. 459; *Marshall* v. *Wabash Railroad Co.* 120 Mo.
275; *Johnstone* v. *Taliaferro*, 107 Ga. 6; *Kent* v. *Barker*,
2 Gray, 535.) The term "issue" is also restricted to legiti-
mate issue unless there is an express declaration to the con-
trary or a necessary implication that illegitimate issue were
intended to be included. (*Marsh* v. *Field*, 297 Ill. 251.)
So, also, terms of kindred when used in a statute include
only those who are legitimate, unless a different intention
is clearly manifest. It is said in *McCool* v. *Smith*, 66 U. S.
459, that this proposition is too clear to require either ar-
gument or authority to sustain it. In *Messer* v. *Jones*, 88
Me. 349, it is said: "Notwithstanding the statute relat-
ing to descent provides that 'kindred of the half blood in-
herit equally with those of the whole blood in the same
degree,' the term 'kindred,' under that statute, means law-
ful kindred."

Had Cynthia Mitchell survived her son she would have
inherited his property, and upon her death intestate her
estate would have been inherited by her mother and her
mother's children in accordance with the fourth paragraph
of section 2 of the chapter on descent. The statute does
not, however, extend the right of the mother to inherit
from her illegitimate child so as to give her the right to
inherit from the children of such illegitimate child, whether
legitimate or illegitimate. A statute of Massachusetts pro-

vided that if an illegitimate child dies intestate and without issue to lawfully inherit his estate such estate shall descend to his mother, or, in case she is not living, to the persons who would have been entitled thereto by inheritance through his mother if he had been a legitimate child. The daughter of an illegitimate child survived her mother and died, and a claim having been made to her estate on behalf of her grandmother, the mother of the illegitimate child, it was held that the statute was not applicable to the distribution of the estate of a person who was not an illegitimate child but one of the descendants of an illegitimate child. (*Sanford* v. *Marsh,* 180 Mass. 210.) In *Curtis* v. *Hewins,* 11 Metc. 294, the question was presented of the construction of a statute providing that "every legitimate child shall be considered as an heir of his mother, and shall inherit her estate in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock." Under this statute it was claimed that the children of an illegitimate son who died in the lifetime of his mother were entitled to inherit land from the grandmother. The plaintiff contended that the statute did not apply to the grandchildren of the mother of the illegitimate child. The trial judge decided that it did not, and a verdict was returned for the plaintiff. The defendant alleged exceptions, but the Supreme Judicial Court held that the decision of the trial court was correct and ordered judgment entered on the verdict. A like decision on a similar statute was rendered by the Supreme Court of North Carolina in *Sawyer* v. *Sawyer,* 28 N. C. 407.

Counsel for the appellee contend that the statute not only makes an illegitimate child the heir of its mother but also makes it capable of inheriting from and transmitting inheritance to the lineal and collateral relatives of the mother the same as a legitimate child. In support of this proposition they cite a number of cases from other States. In none of those cases, however, is the language of the stat-

ute similar to ours, but the purpose to enable the illegitimate child to inherit from and transmit inheritance to the collateral relatives of the mother is clearly stated.  The statute of Virginia, which provided, "bastards also shall be capable of inheriting and transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother," was first construed in the case of *Stevenson's Heirs* v. *Sullivant*, 5 Wheat. 207, in which it was held that illegitimate children could not inherit through their deceased mother from her legitimate child.  This statute was adopted by the State of Kentucky, and the Supreme Court of that State in its construction followed the Supreme Court of the United States in *Stevenson's Heirs* v. *Sullivant, supra*.  (*Scroggin* v. *Allen*, 2 Dana, (Ky.) 363; *Remington* v. *Lewis*, 8 B. Mon. 606; *Jackson* v. *Jackson*, 78 Ky. 390.)  The same construction was given to a statute substantially the same in *Little* v. *Lake*, 8 Ohio, 289, and in *Williams* v. *Kimball*, 35 Fla. 49.  The court of appeals of Virginia declined to follow the decision of the Supreme Court of the United States, but held that the statute gave to illegitimate children the right to inherit from kindred on the mother's side the same as if legitimate. (*Garland* v. *Harrison*, 8 Leigh, 368; *Hepburn* v. *Dundas*, 13 Gratt. 219; *Bennett* v. *Toler*, 15 id. 588.)  The State of Missouri adopted the same statute, and in the early case of *Bent's Admr*. v. *St. Vrain*, 30 Mo. 268, followed the construction given to it in *Stevenson's Heirs* v. *Sullivant*, but later repudiated this construction and adopted that of the Virginia court.  (*Moore* v. *Moore*, 169 Mo. 432.)  The Ohio Supreme Court also repudiated in *Lewis* v. *Eustler*, 4 Ohio St. 354, its earlier construction of the act, though in the meantime a later statute had obviated the necessity of doing so.  In doing so the opinion cited with approval *Town of Burlington* v. *Fosby*, 6 Vt. 83, construing a practically identical statute.  The State of Arkansas gave to its practically identical statute the same construction, holding

that " 'on the part of the mother' means the mother's side
of the genealogical tree." (*Gregley* v. *Jackson,* 38 Ark.
487.) Rhode Island has a statute in practically the same
words as the Virginia statute, and the Supreme Court con-
strued it in the same way as the Supreme Court of Vir-
ginia. (*Briggs* v. *Greene,* 10 R. I. 495; *Grundy* v. *Had-
field,* 16 id. 579.) In Indiana the statute provides that
illegitimate children shall inherit from the mother as if they
were legitimate, and through the mother, if dead, any prop-
erty or estate which she would, if living, have taken by gift,
devise or descent from any other person, and it was held
that an illegitimate daughter inherited from the legitimate
son of her dead mother. (*Parks* v. *Kimes,* 100 Ind. 148.)
In other States decisions have been rendered sustaining the
right of illegitimate children to inherit not only from the
mother but from one another,—from the legitimate chil-
dren of the mother and the lineal and collateral kindred of
the mother. Some of the statutes on which these decisions
have been based have varied to some extent from those
which have been stated but not substantially in meaning,
and in all the cases which hold that an illegitimate child
may inherit from the collateral kindred of the mother the
decision is based upon a statute which expressly or by nec-
essary implication gives the right of inheritance the same
as if the illegitimate child had been lawfully begotten.
(*McGuire* v. *Brown,* 41 Iowa, 650; *Dennis* v. *Dennis,* 105
Tenn. 86; *Berry* v. *Powell,* 47 Tex. C. A. 599; *Messer* v.
*Jones, supra.*) In Connecticut a bastard may receive and
transmit inheritance from and to collateral as well as lin-
eal kindred of his mother though there is no statute for
that purpose; but this rule is based upon the common law
of that State built up from the uses and customs of its
people and from various judicial decisions and differing
from the common law of England and from the Roman
law. In that State the doctrine of the common law as to

bastards never obtained and its decisions are not applicable to this case. *Dickinson's Appeal,* 42 Conn. 491.

In the case of *Morrow* v. *Morrow,* 289 Ill. 135, section 2 of the chapter on descent was considered. An illegitimate son was claiming as an heir of the legitimate daughter of his mother, who was living, and it was held that he was entitled as heir by reason of the plain language of the statute, even though the mother was living. His inheritance was not from the common mother but was from Ollie B. Campbell by reason of the statute conferring the right of inheritance upon the mother and authorizing her illegitimate son to inherit from any person from whom his mother could inherit. This is in accordance with the plain language of the statute, but the decision is not applicable to the facts in this case. Harry B. Morrow inherited because his mother could have inherited from Ollie B. Campbell. The opinion quotes the language used in *Bails* v. *Elder,* 118 Ill. 436, that the statute "confers upon illegitimates and their lawful issue, as respects the mother and any maternal ancestor and any person from whom the mother might have inherited if living, inheritable blood, and as such they have the right of inheritance as fully as legitimate children,"—that is, the inheritable blood gives them the right of inheritance as fully as legitimate children from every person from whom the mother could inherit. It is necessary to go further to ascertain from whom the mother can inherit, and an examination of the statute shows that her right to inherit from her illegitimate children does not extend to inheriting from the descendants of those children.

The next of kin of Wade H. Mitchell who were entitled to his estate as heirs were the lawful next of kin,—the two living brothers of his father.

The decree of the circuit court will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*