Rita Wittbrodt and Arthur Raymond Wittbrodt, Minors by Pearl Wittbrodt, Their Mother and Next Friend, Appellees, v. Leroy Woodland et al., Respondents.

Appeal of The Retirement Board of the Park Policemen's Annuity and Benefit Fund, Appellant.

Gen. No. 39,806.

432

Opinion filed May 11, 1938.

RAYMOND A. CAVANAGH, of Chicago, for appellant.

JAMES A. DAYTON, of Chicago, for appellees.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

The circuit court entered an order quashing the return of the defendants to a writ of certiorari theretofore issued to review a finding of the Retirement Board of the Park Policemen's Annuity and Benefit

Fund. The respondents were trustees of said board at the time these proceedings were instituted and were sued as individuals who constituted said board. The cause now comes before us on an appeal of the Retirement Board of the Park Policemen's Annuity and Benefit Fund, said appeal being from an order quashing said return and awarding to the petitioners the relief they ask.

The facts presented for our consideration are as follows:

Arthur R. Wittbrodt was a police patrolman in the employ of the board of the South Park Commissioners, a municipal corporation, from January 20, 1931, to January 17, 1932. On the latter date he died from injuries received by him on January 16th while in the performance of duty. Subsequent to his death Pearl Wittbrodt made application to the Retirement Board of the Park Policemen's Annuity and Benefit Fund for annuity for herself as the widow of Arthur R. Wittbrodt and for Rita Wittbrodt and Arthur R. Wittbrodt, minors, as children of the deceased policeman. Pearl Wittbrodt was awarded $124.37 per month for herself and $10 a month for each of her two minor children, being the annuity provided by section 31 of the act governing the fund as passed in 1921. (Ill. Rev. Stat. 1937, ch. 105, ¶ 364, sec. 31 [Jones Ill. Stats. Ann. 100.584].) In January, 1934, the board received a communication from Stanley A. Piarowski, Fort Banning, Ga., to the effect that Pearl C. Wittbrodt was not the wife of Arthur Wittbrodt, but that she was Piarowski's wife. Investigation established the truth of this allegation and on February 6, 1934, the board suspended further payments of annuity to Pearl C. Wittbrodt, alias Piarowski, and her two minor children. On December 3, 1936, said Pearl C. Wittbrodt made application for annuity for the two minor children, each of whom was under the age of 18 and alleged each

to be the issue of the deceased policeman. Child's annuity is provided for in section 40 of the act governing the fund. (Ill. Rev. Stat. 1937, ch. 105, sec. 373 [Jones Ill. Stats. Ann. 100.593].) The application for payment of annuity to the minor children was denied by the board on December 9, 1936.

The record filed here further shows that Pearl, the mother of the two minor children herein concerned, had been married to Stanley Piarowski prior to the assuming of relations with Arthur R. Wittbrodt, the father of the petitioners, and had never been divorced from her said husband and said husband was still living; that no ceremony was ever performed between the said Pearl Piarowski and Arthur Wittbrodt and no license issued for a marriage between them; that Arthur Wittbrodt did not leave him· surviving any widow or any legitimate children.

The facts further show that during his lifetime the deceased cohabited with the mother of the plaintiffs as husband and wife and in his social life among his own family circle, among his own friends and acquaintances, and in the records of the South Park Commissioners under his oath, he held out the mother of the plaintiffs as his wife and the plaintiffs as his children; that he was present at the times the plaintiffs were baptized and acknowledged that he was their father and bestowed his name upon them and [quoting from appellee's brief] "but for his untimely decease the plaintiffs would have continued to enjoy a normal family life that *was no different from that of a legally constituted husband and wife family group.'* " (Counsel's italics.) To so hold would be contrary to the statutes and the public policy of the State. But, before we analyze the contentions on the merits of this case, we shall consider the jurisdiction of the circuit court to pass upon and review the action of the Retirement Board of Park Policemen's Annuity and Benefit Fund.

The said fund was duly created by an act entitled, ''An Act to provide for the creation, setting apart, maintenance and administration of a Park Policemen's Annuity and Benefit Fund'' approved June 29, 1921, in force July 1, 1921.

Section 2 of the said act [Ill. Rev. Stat. 1937, ch. 105, § 335; Jones Ill. Stats. Ann. 100.555] provides that the Retirement Board shall be trustees charged with the duty of administering the annuity and benefit fund provided for in the act.

Section 6, paragraph (g) of said act [Ill. Rev. Stat. 1937, ch. 105, § 339; Jones Ill. Stats. Ann. 100.559] makes it the duty of the respondent board to consider and pass upon all applications for annuities to authorize the payment of any annuity, and suspend any payment of annuity in accordance with the provisions of the act.

Section 40 of said act (Ill. Rev. Stat. 1937, ch. 105, sec. 373 [Jones Ill. Stats. Ann. 100.593]) provides that a child's annuity shall be granted and paid for the benefit of any child less than 18 years of age the issue of any policeman whose death shall result from injury incurred in the performance of any act of duty; that such annuity shall be in the amount of $10 per month for each child while a *widow* of such deceased policeman survives and in the amount of $25 per month for each child if no such *widow* exists.

Thereafter the return to the writ of certiorari showed a demand for $25 a month against the Board by Rita Wittbrodt and Arthur Raymond Wittbrodt, minors, by Pearl Wittbrodt, their mother and next friend, and thereafter a stipulation of facts was entered into which reads as follows:

''For the purpose of avoiding the necessity of introducing evidence in connection with the claim of Rita Wittbrodt and Arthur Raymond Wittbrodt, minors, for children's annuity as the children of Arthur Robert

Wittbrodt, a deceased park policeman, it is stipulated and agreed that the two minor children herein referred to were the children of Pearl Piarowsky, also known as Pearl Wittbrodt, and the issue of Arthur Robert Wittbrodt; that prior to the assuming of the marital relation with the said Arthur Robert Wittbrodt the said Pearl Piarowsky had been married to one Stanley A. Piarowsky and had never been divorced from her said husband; that no ceremony of marriage was ever performed between the said Pearl Piarowsky and Arthur Robert Wittbrodt, nor any license ever issued for a marriage between them; that the said Arthur Robert Wittbrodt, a park policeman, was killed while in the performance of an act of duty and left him surviving no widow and no legitimate children.'' No question is raised here as to whether or not we should consider these facts, as contained in the stipulation. In fact we are urged to do so, the decisions of the Supreme Court to the contrary.

It is agreed and the record shows that the Retirement Board has jurisdiction of the parties and the subject matter and that it acted upon evidence submitted and did not exceed its jurisdiction.

Thereupon the trial court entered an order stating that the cause came on to be heard upon the motion of petitioners, to quash the record of return by respondents herein, filed to the writ of certiorari issued in said cause, and on motion of respondents heretofore filed herein to quash the writ of certiorari and to dismiss the petition; and the court having heard arguments of counsel for the respective parties, and having considered and inspected said return of said respondents, and being now fully advised in the premises : The court doth find specially that the petitioning minors are the issue of Arthur Robert Wittbrodt, deceased; that the said Arthur Robert Wittbrodt during his lifetime did at all times recognize the petitioners as his own chil-

dren, had the said petitioners baptized as his children and continuously had their custody and association, and provided for their care and education.

Plaintiffs' theory of the case is that they are entitled to annuity as the "issue" of Arthur R. Wittbrodt, the deceased policeman, in the amount of $25 each per month.

The court further finds that said record and return of said respondents is insufficient in law to sustain the defense of the respondents.

Motion of respondents to quash said writ of certiorari and to dismiss said petition was denied and it was ordered that the return of the respondents be quashed. It was also further ordered that respondents forthwith reinstate said petitioners to the child's annuity rolls of the Park Policemen's Annuity and Benefit Fund and pay or cause to be paid to petitioners $25 per month each, beginning with the day following the date of the death of Arthur Robert Wittbrodt, less such amounts only as have heretofore been paid to petitioners in the form of child's annuity.

The above finding by the trial court was based on a review of the entire proceedings which occurred before the trustees of the Retirement Board of the Park Policemen's Annuity Benefit Fund and by its finding the trial court differed with said board as to the facts and the law and substituted its judgment for that of the board. This was error.

As was said in the case of *People ex rel. Maloney v. Lindblom,* 182 Ill. 241, 244: "The only office of the writ of certiorari is to bring before the court the record of the proceedings of the inferior tribunal for inspection, and the only judgment to be rendered is that the writ be quashed or that the record of the proceedings be quashed. *Chicago and Rock Island Railroad Co. v. Fell,* 22 Ill. 333."

In the instant case the court ordered that respondents reinstate the petitioners to the child's annuity rolls at $25 per month each, beginning with the day following the death of Arthur Robert Wittbrodt, less such amounts only as have heretofore been paid to petitioners as child's annuity.

The court continuing in the case of *People v. Lindblom, supra,* said:

"The petitioner seems to be laboring under another misconception in regard to his rights and the power of the court in a proceeding of this character. The inferior tribunal, where the record is brought before the court by writ of certiorari, may have erred in its rulings on questions of law during the progress of the trial, or it may have erred in the application of the law to the facts in reaching its final judgment, and yet those errors cannot be reviewed and corrected in a proceeding of this character. On a return to a writ bringing the record before the court the only proper inquiry is whether the inferior tribunal had jurisdiction and proceeded legally,—i. e., followed the form of proceedings legally applicable in such cases,—and not whether it correctly decided the questions arising upon the admission or exclusion of evidence, the giving and refusing of instructions, and other like questions, during the progress of the trial. The rulings of a court may be erroneous and yet it may have jurisdiction and proceed legally. (*Hamilton v. Town of Harwood,* 113 Ill. 154.) The rule announced in the case cited has been fully sustained by other cases. (*Donahue v. County of Will,* 100 Ill. 94; *Scates v. Chicago and Northwestern Railway Co.,* 104 id. 93.) Here the jurisdiction of the civil service commission is not disputed, and it is apparent that the tribunal proceeded according to the forms of law applicable in such cases."

A more recent case is that of *Hopkins v. Ames,* 344 Ill. 527, wherein the Civil Service Commission of the

city of Chicago, after hearing, discharged a policeman and a writ of certiorari was issued by the circuit court and after a hearing on the return quashed the record of the commission and ordered the man reinstated in the police force. The court in approving what was said in *People v. Lindblom, supra,* stated on page 532: "After a trial is had before the civil service commission in the manner pointed out by the statute and evidence is taken tending to show the guilt of the person charged, the action of the civil service commission is final and not reviewable by the courts. (*People v. City of Chicago, supra; City of Chicago v. People, supra.*) To allow a review of the evidence by the courts on investigations conducted by the civil service commission or under its direction would be the exercise of executive powers, which the separation of the government precludes the courts from exercising. (*People v. City of Chicago, supra; City of Aurora v. Schoeberlein,* 230 Ill. 496.) In this case, as in the *Carroll case supra,* the trial court was without jurisdiction to review the findings of the commission, and it was in error in holding that there was no evidence fairly tending to support the charges."

In the instant case we do not believe the court had jurisdiction to review the actions and findings of the Retirement Board of Trustees.

In addition to claiming the circuit court had jurisdiction to review the action of the Retirement Board, appellees' counsel contends that the children of the deceased policeman were entitled to be considered as legitimate children because the deceased officer stood in the petition of *loco parentis.* The language concerning the payment of money to children is contained in ch. 105, par. 373, sec. 40, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 100.593], which reads as follows:

"373. To WHOM CHILD'S ANNUITY MAY BE PAID—AMOUNTS.] § 40. Child's annuity, as hereinafter pro-

vided, shall be granted and paid for the benefit of any child less than eighteen (18) years of age the issue of any following described policeman who shall die on or after the first day in the month of January of the first year after the year in which this Act shall come in force and effect; provided, such child shall have been born before such policeman shall have resigned or been discharged from the service.''

The above provision makes no mention or classification as to parties in *loco parentis.*

It is contended by counsel for appellee that the legislature intended by that provision of the law to include illegitimate children of which the deceased was one of the natural parents, as well as those of whom he was the legal father.

In the case of *Murrell v. Industrial Commission,* 291 Ill. 334, the court said:

''The words of a statute will be construed in their ordinary sense and with the meaning commonly attributed to them under such construction unless such construction will defeat the manifest intention of the legislature. When the words have a well settled meaning through judicial interpretation, they must be understood, when used in a statute, to have that meaning unless a different meaning is unmistakably indicated. It is a rule of construction that *prima facie* the word 'child' or 'children,' when used in a statute, will or deed, means legitimate child or children, and will not be extended, by implication, to embrace illegitimate children unless such construction is necessary to carry into effect the manifest purpose of the legislature, the testator or the grantor. *Blacklaws v. Milne,* 82 Ill. 505; *Orthwein v. Thomas,* 127 Ill. 554; and cases from other jurisdictions.

'' At common law a child born out of wedlock was nobody's child. He was without parents or kindred, without name, without heritable blood and without

many rights. He could have no heirs except his own lineal descendants. He could not inherit even from his mother or she from him. . . . His parents were under no legal obligation for his support. This is his condition in Illinois today except as it has been changed by statute. . . . The Workmen's Compensation act mentions only children, by which is ordinarily meant legitimate children, and there is no word in the act which indicates that the legislature used the word in any other than its ordinary sense. . . .

"The right to compensation under the statute of 1915 does not rest upon dependency or support as a member of the family, but upon the existence of the relation specified in the statute and the legal obligation to support or actual contribution. The right is statutory and depends upon conformity with the terms fixed by the legislature. The policy of the State toward children born outside of the marriage relation has been very considerably modified from that of the common law by statute. The extent to which such modification should go is a question for the determination of the legislative department of the State and not of the courts."

In *Marsh v. Field,* 297 Ill. 251, which was a case involving the meaning of the word "issue" in the will of Marshall Field, where it was sought to secure a portion of the estate for an illegitimate child, the Supreme Court held that the word "issue" means "lawful issue" and said: "It is not conceivable that a man of intelligence and moral perception should have had the conscious intention of providing for the illegitimate issue not only of his sons and grandsons but his daughters and grand-daughters."

So, also, in the instant case, it is inconceivable that the legislature intended by the language employed in the act to include therein any natural child of a policeman, since deceased, which said child was born out of

wedlock and not subsequently legitimatized by marriage or adoption and who could after the policeman's death come forward and prove its own illegitimacy and secure public revenue to be paid for its support and maintenance. Such an interpretation of the language of the act is not justified, and it would be destructive of the sanctity and security of the marriage relationship.

The petitioner Pearl Wittbrodt, so called, has already obtained for herself and her illegitimate children public revenue from the Park Board by a false affidavit. No cross-petition having been filed in this case seeking the return of said funds, therefore, as to such sum of money we can do nothing under the present condition of the record.

For the reasons herein given the judgment order of the circuit court of Cook county is reversed and the cause is remanded with directions to quash the writ of certiorari issued by the circuit court.

*Judgment order reversed and cause remanded with directions.*

HALL, J., concurs.

HEBEL, P. J., specially concurring: I specially concur with the conclusion of the court but not with all that is said in the court's opinion.