MODERN WOODMEN OF AMERICA v.
BARNES et al.

Civil Action No. 316.

District Court, D. Minnesota,
Fifth Division.

July 6, 1945.

Gillette, Nye, Harries & Montague, of Duluth, Minn., for the plaintiff.

W. J. Brown, of Duluth, Minn., and Gemrich, Moser, Christy & Brown, of Kalamazoo, Mich., for all defendants except Jen-

nie L. Barnes, Roy Johnstone, and James E. Johnstone.

George K. Trask, of Chisholm, Minn., and John M. Gannon, of Hibbing, Minn., for defendant Jennie L. Barnes.

No appearance for defendants Roy Johnstone and James E. Johnstone.

NORDBYE, District Judge.

It appears that one Harry J. Cole, the policy holder of a $3,000 Modern Woodmen insurance policy, died at Chisholm, Minnesota, on June 22, 1942, without having designated any other principal or contingent beneficiary in place of his wife, the named beneficiary, who pre-deceased him. There survived the insured no children, grandchildren, father, or mother. He did, however, leave surviving him one sister of the whole blood, Jennie L. Barnes; one brother of the half blood, Garrett D. Cole; one sister of the half blood, Matie Beck; seven nieces and nephews, the legitimate children of another brother of the half blood, William A. Cole, which brother pre-deceased him; and nine other nephews and nieces, the legitimate children of another sister of the half blood, Norma Cole Johnstone, which sister pre-deceased the insured.

The stipulated facts recite that William A. Cole, Garrett D. Cole, Norma Cole Johnstone, and Matie Cole Beck were the children of one John Cole; that these children were the issue of a lawful marriage but that "the parents of these four children became separated but were never divorced, so far as can be ascertained or is known to the defendants herein." Further, "that while the mother of these four children was still alive, the father (John Cole) married the woman who became the mother by him of defendant Jennie L. Barnes and the said Harry J. Cole, deceased; that said Jennie L. Barnes is a full sister of said Harry J. Cole, deceased insured." No further details or circumstances as to this matter appear in the stipulation. It appears, therefore, that the policy holder, Harry J. Cole, was one of these children of the same father (John Cole), but four of them—William A. Cole, Garrett D. Cole, Norma Cole Johnston, and Matie Cole Beck—were the issue of the first marriage, while two of them—Harry J. Cole, the policy holder, and Jennie L. Barnes—were the issue of the second marriage of John Cole.

This is an impleader action, and the plaintiff herein has proceeded by a bill of interpleader and has deposited, under order of the Court, the proceeds of the policy with the Clerk of this Court. The question now arises as to the distribution of the proceeds of such policy. Jennie L. Barnes claims the entire proceeds as the sister of the whole blood. The living half brothers and sisters and the children of the deceased half brothers and sisters contend that the half brothers and sisters of the insured should, under the contract of insurance, participate equally with the sister of the whole blood. It is recognized by all of the defendants that the by-laws of the plaintiff fraternal benefit society were made a part of the contract of insurance. Reference, therefore, must be made to Section 29, Paragraph 3, of such by-laws, which pertain to the distribution of insurance benefits if the insured dies and there is no principal or contingent beneficiary designated. Section 29(3) reads:

"If, however, in the event of the member's death there is no principal or contingent beneficiary designated in the certificate who is eligible to receive payment under the provisions of these by-laws, then the amount to be paid under any such certificate or rider shall be payable to the member's widow or widower; if no widow or widower to the member's children (by legitimate blood relationship or by legal adoption) and in case there are any such deceased child or children, the child or children of such (by legitimate blood relationship or by legal adoption) shall take the share of such deceased parent; if no such child, or such child or children of such deceased child or children, to the mother; if no mother, to the father; if no father, to the brothers and sisters, share and share alike, and in case there are deceased brothers or sisters, then to the surviving child or children (by legitimate blood relationship or by legal adoption) of such brother or sister, who shall take the share of such brother or sister, and if such child or children shall be dead, to the grandchild or grandchildren (by legitimate blood relationship or by legal adoption) of such brother or sister, who shall take the share of such deceased parent, if no brother or sister, or such child or children, or such grandchild or grandchildren of any deceased brother or sister, then the amount to be paid under any such certificate, and any rider, shall be paid to the legitimate next of kin of said member not beyond the fourth degree, who are the distributees of the member's personal estate, according to

the statutes of the state where said member resided at the time of his death."

The claimant Jennie L. Barnes concedes that, under that section, legitimate half sisters or brothers of the insured would participate equally with a legitimate, full sister of the insured, but she contends that, under the stipulation of facts herein, one must deduce that John Cole never divorced his first wife and hence entered into a bigamous marriage with the mother of herself and the insured. It is her position, therefore, that the relation of brother and sister does not exist as between the insured and the children of John Cole by his first marriage. It is urged that the insured left no legal half brothers or half sisters, and that, therefore, as the sister of the whole blood, she must be accorded the entire insurance proceeds. But the stipulated facts will not justify the presumption indulged in as to the illegitimacy of the children of John Cole's second marriage. First, it should be pointed out that the union between John Cole and the mother of the insured and Jennie L. Barnes was a marriage. Whether the marriage was ceremonial or at common law the stipulation does not indicate. Furthermore, it appears that John Cole married the insured's mother when the mother of the four children of Cole's first marriage was living. Certainly, no indulgence of a presumption of a bigamous marriage should be made merely because there is no record of a divorce "so far as can be ascertained or is known to the defendants herein." The first marriage may have been legally terminated, either by John Cole, or at the instance of his first wife, and these children may have been unaware of such termination and have been unable to locate the record of a divorce. The stipulation does not recite the character or the extent of the search or investigation which may have been made as to court records or elsewhere, nor is there any evidence or showing which would even suggest that the reputation or common talk in the community was that he was living in an illicit relation with the mother of these two children. Further, it may be pointed out that, while the stipulation recites that the first wife was living when the second marriage took place, there is no showing that she was living when the insured was born. An illicit union, if such existed, may have been legitimatized before the birth of the insured. Certainly, it would be wholly unwarranted to stigmatize the deceased insured as an illegitimate son under the recital of the facts herein. Courts are loath to declare a child illegitimate, and, in view of the marriage of John Cole and the mother of the insured, there is a strong presumption as to the validity of the marriage and the legitimacy of the children of such marriage. In fact, this is one of the strongest presumptions known to the law. Moreover, the presumption of the continuance of the first marriage of John Cole is not as strong as the presumption of legitimacy of the children of the second marriage. Barker v. Barker, et al., 172 App.Div. 244, 158 N.Y.S. 413. Indeed, there is a long line of decisions which support the principle that "if necessary to support the legality of the second marriage, it will be presumed, in the absence of evidence to the contrary, that the first marriage had been legally dissolved." In re Meehan's Estate, 150 App.Div. 681, 135 N.Y.S. 723, 724.

There is another significant circumstance that militates against the contention of Jennie L. Barnes. While this circumstance is not specifically recited in the stipulation, it is recognized and discussed by both counsel in their briefs. In the first application for insurance in 1910, Harry J. Cole was asked to list his relations in addition to the named beneficiary, his wife, and in his application he represented his sisters and brothers to be Jennie L. Barnes, William A. Cole, Garrett D. Cole, Matie Beck, and Norma Johnstone. This reference to the children of his father's first marriage as his brothers and sisters strongly suggests that the insured himself assumed and recognized a legitimate relationship to his half brothers and sisters; at least, it tends to indicate that he assumed that his father and mother were legitimately married. It is highly improbable that he would refer to the children of his father's first marriage as his brothers and sisters if in fact he considered himself an illegitimate child of a bigamous marriage. True, the recitals in the application for insurance for the initial policy in 1910 were requested by the company in order to determine whether the applicant was a proper risk and not for the purpose of designating contingent beneficiaries, and it may be pointed out that the first policy was later surrendered and the new forms of policies issued thereafter did not require, or at least did not contain, such information in any of the subsequent applications. But the present policy is, for all practical purposes, the original contract is converted form. Certainly, with the meager recital

of the history and circumstances of the two marriages of John Cole, the family information given by the insured in the year 1910 is not without significance. It does tend to support the presumption of legitimacy.

Moreover, it will be observed that the section of the by-laws referred to above sets forth no requirement that the brothers and sisters must be legitimate in order to be related to the insured. · The requirement of legitimacy is specifically mentioned, however, as to the insured's children and grandchildren, and as to the children and grandchildren of deceased brothers and sisters. The qualification thus used as to the legitimacy of the classes mentioned and the failure to so qualify the relationship of brothers and sisters of the insured must have been intentional and not an inadvertence. It tends to emphasize a designed intention on the part of the framers of this by-law to consider a brother or sister of the insured as being entitled to share in the proceeds of the insurance regardless of his or her legitimacy. Generally speaking, it is universally recognized that "brother and sister" embraces a brother and sister of the half blood as well as the whole blood. Bouv.Law Dict., Rawle's Third Revision, p. 399, defines "brother" as follows: "He who is born from a father and mother with another, or from one of them only." In 12 C.J.S. p. 373, a brother is defined as "a male person who has the same father and mother with another person, or who has one of them." Also, 12 C.J.S., Brother, at page 373, "In particular connections, it has been held that the term, when used without any qualifying words, may include a brother of the half blood, * * *." Among the definitions of "brother" found in Webster's New International Dictionary is the following: "A male person * * * having the same parents (whole brother), or one parent only in common (half brother)." See, also definition of "Brother" in Vol. 5, Words and Phrases, Perm.Ed.

Finally, the claimant Jennie L. Barnes asserts that an illegitimate child, under the common law, is a child of no one, that he is without parents, kindred, or name (Hardesty v. Mitchell, 302 Ill. 369, 134 N.E. 745, 24 A.L.R. 565), and that, under the stipulated facts, it must be inferred that the insured was an illegitimate child and therefore had no brothers or sisters. But, clearly, if that principle is sound and applicable herein, it will defeat Jennie L. Barnes' claims as well. Under that strict common law characterization of a bastard child, she then bore no relationship to the insured. Neither can she inherit this insurance as next of kin under the by-laws of the plaintiff because she is not a "legitimate next of kin" as the by-laws provide. The provisions of Section 525.173, Minnesota Statutes 1941, which provide that, where an illegitimate child dies intestate, his estate shall descend to his mother, or, in case of her prior decease, to her heirs other than such child, and Section 525.172, Minnesota Statutes 1941, which provides that an illegitimate child shall inherit from his mother the same as if born in lawful wedlock, cannot avail this claimant because, while under the laws of descent in Minnesota she could inherit from the common mother of herself and the insured, one cannot ignore the express language of the plaintiff's by-laws which provide that the distribution under the statutes of the state where the member resided at the time of his death must be made to the legitimate next of kin of said insured. It seems clear, therefore, if the insured had no brothers and sisters, that while the laws of Minnesota will govern the distribution to the next of kin not beyond the fourth degree, such next of kin must be legitimate, which, according to the contention of the claimant Jennie L. Barnes, she is not.

Summarizing, therefore, the Court's views, it seems reasonable to conclude that the presumption of legitimacy to which the insured is entitled has not been overcome by the stipulated facts, and that, therefore, the half brothers and sisters will participate equally with the whole sister of the insured in the insurance proceeds; and second, if the insured was the illegitimate child of John Cole, the father of Matie Beck, Garrett D. Cole, William A. Cole, and Norma Cole Johnstone, the latter are the brothers and sisters of the half blood and under the terms of the policy should inherit, share and share alike, with the illegitimate sister of the whole blood of the insured. If there was a bigamous second marriage, no sound reason is suggested why any distinction under the terms of the by-laws governing this policy should be made between the illegitimate sister of the whole blood of the illegitimate insured, and the legitimate half sisters and brothers of such illegitimate

child, the insured. It follows, therefore, that the proceeds of this policy should be divided five ways equally so that Jennie L. Barnes, Matie Cole Beck, and Bernard J. Mouer (Administrator of the Estate of Garrett D. Cole, deceased, Garrett D. Cole having died January 10, 1943) shall each receive one-fifth; that the seven children of William A. Cole shall receive one-fifth, share and share alike; and the nine children of Norma Cole Johnstone shall receive one-fifth, share and share alike.

Findings of fact and conclusions of law in harmony herewith may be presented. An exception is reserved to Jennie L. Barnes.