JOY DOOLEY, Plaintiff-Appellant, v. REIMER FARMS, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—94—0070

Argued June 14, 1994.—Opinion filed June 30, 1994.

William A. Allison (argued), of Allison & Kelly, of Bloomington, for appellant.

Todd E. Bugg (argued), of Costigan & Wollrab, P.C., of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On October 31, 1968, when a testator named John Dowling died, the anti-lapse provision of section 49 of the Probate Act (1967 Act) stated:

> "When a devise or legacy is to a descendant of the testator who dies before the testator and there is no provision in the will for that contingency, the *descendants* of the devisee or legatee take per stirpes the estate so devised or bequeathed." (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 3, par. 49.)

Section 12 of the 1967 Act then provided that a child born out of wedlock is an "heir of his mother and of any maternal ancestor *** from whom his mother might have inherited." (Ill. Rev. Stat. 1967, ch. 3, par. 12.) Section 12 of the 1967 Act then provided for the legitimation of a child born out of wedlock by the marriage of the natural parents and the father's acknowledgment of paternity. However, that has not happened here. We hold that under the foregoing legislation, a remainder interest in fee in Illinois real estate devised in John Dowling's will to his son Maurice Dowling, who died prior to John Dowling, could not pass to and vest in plaintiff, Joy Dooley, who purported to be a daughter of Maurice Dowling, born out of wedlock, and the only child fathered by him.

On June 28, 1993, plaintiff brought suit in the circuit court of

McLean County against defendants Reimer Farms, Inc., James E. and Ellen M. Reimer, and unknown heirs of Maurice Dowling. Plaintiff alleged she was the daughter and only child of Maurice and should take a one-half remainder interest in fee in real estate which John's will purported to devise to Maurice. She also alleged the named defendants were in possession of that property. Plaintiff then alleged that the life estate had terminated and requested a declaration of her interest in the real estate and rents and income which had been received since the life estate terminated. On October 8, 1993, plaintiff was permitted to file an amendment which named Donald S. and Mary K. Rutherford and Dorren Mark Heins as additional defendants and alleged they were in possession of additional real estate which had passed to plaintiff in the same manner as the other property.

The parties agree that plaintiff was born out of wedlock. On November 15, 1993, the Reimer and Rutherford defendants filed a motion to dismiss citing a substantial number of theories. After hearing arguments, the circuit court entered an order on January 3, 1994, dismissing the complaint with prejudice. The court ruled that (1) plaintiff could not take under the anti-lapse provision of section 49 of the 1967 Act because, having been born out of wedlock, she could not be a "descendant" of Maurice Dowling within the meaning of that legislation even if he was proved to be her natural father; and (2) in any event, any cause of action she might otherwise have was barred by the two-year limitation of section 8 of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/8 (West 1992)). Plaintiff has appealed. We affirm.

Because, as we have indicated, we are convinced that a child born out of wedlock did not qualify as a descendant of a deceased father under section 49 of the 1967 Act on October 31, 1968, when the estate whose ownership is in issue had vested, we need not consider the application of section 8 of the Parentage Act or other defense theories in order to affirm.

On October 31, 1968, section 11 of the 1967 Act set forth a procedure by which property "*descends* and shall be distributed" and speaks of "*descendants.*" (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 3, par. 11.) Plaintiff does not dispute that, at that time, she would not have taken from intestate estates of either John or Maurice Dowling as a "descendant." Clearly, section 12 of the 1967 Act created the only exceptions to children born out of wedlock being descendants of their parents for purposes of inheritance. We see no logical reason why the word "descendants" would have a broader scope in the anti-lapse statute than in a statutory provision which focuses upon how property "descends."

Plaintiff recognizes that in *Marsh v. Field* (1921), 297 Ill. 251, 256, 130 N.E. 753, 755, the court held that unless a contrary intention in a will is shown, "persons" taking under the description of "children" or "issue" will be limited to "legitimate [children] *** or issue." Plaintiff also notes that in *Hardesty v. Mitchell* (1922), 302 Ill. 369, 373, 134 N.E. 745, 746-47, similar sentiments were expressed in regard to the words "child or children." Plaintiff then calls to our attention that at the time of *Marsh* and *Hardesty,* and up to the time of the enactment in 1939 of the Probate Act (1939 Act), the anti-lapse statute previously in force used the terms "child," "grandchild" or "issue" (see Ill. Rev. Stat. 1937, ch. 39, par. 11) rather than making reference to a "descendant" or "descendants" as in section 49 of the 1967 Act. Those latter words were put into the anti-lapse provision of the 1939 Act. (See Ill. Rev. Stat. 1939, ch. 3, par. 162.) Citing the maxim that an amendment to a statute creates a presumption of an intent to change its meaning (*Weast Construction Co. v. Industrial Comm'n* (1984), 102 Ill. 2d 337, 340, 466 N.E.2d 215, 216), plaintiff contends that the change that was made at that time was intended to include children born out of wedlock within the coverage of the anti-lapse legislation.

Plaintiff maintains that the word "descendant" had been given a broader meaning than "issue," "child" or "children" by the supreme court and must have been intended to include those in line of descent who were born out of wedlock. This theory is based upon language from the opinion in *Bates v. Gillett* (1890), 132 Ill. 287, 297, 24 N.E. 611, 612. There, the issue concerned the nature of an estate devised to the testator's daughters for life with a " 'remainder to their children and *descendants.*'" (Emphasis added.) (*Bates,* 132 Ill. at 289, 24 N.E. at 611.) No question was raised as to whether an individual involved had been or would have been born out of wedlock. In explaining that the word "descendant" has the same meaning as "issue" and that the line of descent extends beyond one generation, that court stated:

> "A descendant is a person who is descended from another,—that is, one who proceeds from the body of another, however remotely. The word is the converse or opposite of ascendant. [Citations.] Descendants include every person descended from the stock referred to. It is co-extensive with issue, but does not embrace others not of issue. It is not to be understood as meaning next of kin, or heirs-at-law, for these phrases comprehend persons in the ascending as well as the descending line, and may also include collaterals; but it does mean the issue of the body of the person named, of every degree, such as children, grandchildren and great-grandchildren,

and all others in the direct descending line." *Bates*, 132 Ill. at 297, 24 N.E. at 612.

We do not agree that the change in the wording of the anti-lapse provision arising from the enactment of the 1939 Act indicated an intent to include children born out of wedlock as "descendants" of their natural male ancestors. No case decided prior to the enactment of the 1939 Act had so held. The language of *Bates* upon which plaintiff relies was accompanied by a statement that the words "descendant" and "issue" were identical. As plaintiff has pointed out, the *Marsh* court had stated that children born out of wedlock were not issue. A more logical explanation for the change in the wording of the anti-lapse provision upon enactment of the 1939 Act was to conform the anti-lapse provision to the language of the statutory provision for the descent of property in the absence of a will.

Plaintiff also points out that under the anti-lapse statute in the 1939 and 1967 Acts, the concept of being a "descendant" involves not only the descendants of the devisee or legatee but also the relationship between the testator and the devisee or legatee. Plaintiff posits the situation where a testator makes a devise to a blood son born out of wedlock to a woman who never married the testator. Plaintiff points out the likelihood that if the blood son was named as a devisee or legatee, the testator would have wanted the children born in wedlock of the blood son to take by substitution. The fact that the individual born out of wedlock in the possible line of succession was actually named in the will might create an expressed intent for the anti-lapse statute to operate. That situation would not create the problem here, where a person not named in the will in issue and possibly unknown appears many years after an estate has vested and purports to be a child born out of wedlock to the testator. In any event, the situation suggested by plaintiff is not one where a child born out of wedlock is not mentioned in the will but would take the estate. That would be the situation here if plaintiff is permitted to recover.

Plaintiff objects to drawing analogy between the anti-lapse statute and those on descent. She refers to language in a decision of the appellate court for the third district, which was the predecessor of this court. In explaining the operation of the then anti-lapse legislation that court stated:

"It is apparent upon a consideration of the purpose of the enactment of said section 11 [anti-lapse provision] that the child or grandchild taking the legacy or devise of his or her parent or grandparent takes such legacy or devise *under and by virtue of the will of the testator* or testatrix and not by descent from his or

her parent or grandparent, and in determining the status of the parties the child or grandchild taking under and by virtue of the provisions of said section 11 must be deemed to take under the will precisely as if such child or grandchild had been specifically designated in the will as a legatee or devisee." (Emphasis added.) (*Hay v. Boling* (1911), 162 Ill. App. 55, 58-59.)

However, as indicated in the cases cited by plaintiff, the reluctance to permit children born out of wedlock to take from a decedent's estate unless express provision is made for that to happen arises as much from cases interpreting wills as it does from cases concerning statutory provisions for intestate distribution of estates.

In *In re Estate of Karas* (1975), 61 Ill. 2d 40, 329 N.E.2d 234, the court upheld, against constitutional challenge, the statutory format under the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 12) which prevented children born out of wedlock from inheriting from their blood fathers absent a subsequent marriage of the parents. Then, in *Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459, the United States Supreme Court held that the Illinois statutory provisions for descent violated the equal protection clause because a sufficient reason did not exist to make such a difference between children in regard to their succession to property. The *Trimble* court recognized that allowing children born out of wedlock to take in estates of their natural fathers could create problems in regard to proof of paternity, frivolous claims, and uncertainty of titles. However, that court felt that Illinois could have done more than it had done to alleviate those problems while still enabling children born out of wedlock to inherit. The classifications involved were those of children born in wedlock and those without. Gender distinctions were not discussed.

In *In re Estate of Rudder* (1979), 78 Ill. App. 3d 517, 397 N.E.2d 556, the appellate court for the second district refused to give retroactive application to *Trimble* so as to allow an estate proceeding to be reopened to enable a child born out of wedlock to obtain a share of the proceeds of a wrongful death action settlement. The court noted that in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 106-07, 30 L. Ed. 2d 296, 306, 92 S. Ct. 349, 355, the United States Supreme Court set the following criteria for the determination of whether a decision in a civil case should be given retroactive or only prospective application. The criteria included (1) whether a new principle of law was established, (2) whether the purpose of the decision would best be served by retroactive application, and (3) the equities of the case. *Rudder*, 78 Ill. App. 3d at 520, 397 N.E.2d at 558.

The holding in *Trimble* may affect, by analogy, the interpretation

to be given to anti-lapse legislation, but we do not deem applying it to the determination of the instant remainder estate which vested on October 31, 1968, more than eight years before *Trimble*, would be appropriate. The *Trimble* court's recognition of the problems involved with the orderly administration of estates when the rights of children born out of wedlock are involved indicates a lack of intent to give the decision such a lengthy retroactive effect. Rather, the purpose of the decision seemed to be to require States to take reasonable steps to avoid absolute bars of inheritance by those born out of wedlock. *Trimble*, 430 U.S. at 771, 52 L. Ed. 2d at 40, 97 S. Ct. at 1465.

Because of our determination that on October 31, 1968, the remainder interest which plaintiff seeks could not pass under section 49 of the 1967 Act to any child born out of wedlock to the deceased's intended devisee, Maurice Dowling, we affirm the circuit court's dismissal of plaintiff's complaint seeking that interest.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.