OPINION OF THE COURT
Arnold Guy Fraiman, J.
The two defendants in this case are charged in a consolidated indictment containing a total of 99 counts with violating sections 672 and 673 of the Banking Law, which is punishable as a class E felony. By the instant motion, made at the conclusion of the jury selection process, they seek the declaration of a mistrial on the ground that the District Attorney has violated their constitutional rights by exercising his peremptory challenges on the voir dire so as to systematically exclude all persons of the Jewish faith from the jury. It is alleged by defendants’ counsel that both defendants are Jewish; that all prospective jurors who were Jewish were peremptorily challenged by the prosecutor; and the jury as presently constituted contains no Jewish persons as either regular or alternate jurors.
In opposition to the motion, the District Attorney denies that his peremptory challenges were exercised for the purpose of excluding persons of the Jewish faith, and argues that even if they were so used, their use in this manner would not contravene the equal protection clause of the United States Constitution. In support of his position, the District Attorney relies upon Swain v Alabama (380 US 202), which has been uniformly followed in the Federal courts in the Second Circuit and elsewhere. In that case the court held that a defendant in a criminal case did not have a constitutional right to examine into the prosecutor’s reasons for the exercise of his peremptory challenges in any given case, even if it were shown that all prospective jurors belonging to a particular ethnic group were removed because of their membership in such group. However, the court noted that if it could be shown that the prosecutor in case after case has established a pattern of systematically excluding members of a particular ethnic group, such conduct might constitute a violation of the equal protection clause.
In the instant case, there is no contention by defendants that the District Attorney has excluded persons of the Jewish faith from juries in other cases. Rather, their factual allegations are limited to the case on trial, and it is their contention that, the Swain case notwithstanding, the systematic exclu *276 sion from the jury by the District Attorney of members of a particular ethnic group, in this case persons of the Jewish faith, denies them the right to a trial by their peers, as guaranteed by section 1 of article I of the New York State Constitution.
This is a case of first impression, the courts of New York never having had occasion to pass upon this question. However, the issue has arisen recently in California and in Massachusetts, and both jurisdictions have found that such a practice, even in a single case, is violative of the Constitutions of those States. In People v Wheeler (22 Cal 3d 258), the two defendants, who were charged with murder, were black and their alleged victim was white. Seven prospective jurors who were black were all peremptorily challenged by the prosecutor, and the jury which ultimately tried and convicted the defendants was all white. The Supreme Court of California, in reversing the convictions, held (pp 276-277) that, "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution.”
In Commonwealth v Soares (— Mass —, 387 NE2d 499), the three defendants were also black and were also convicted of the murder of a white victim. Thirteen members of the venire were black. Twelve of them were challenged peremptorily by the prosecutor. The thirteenth black venireman was not challenged and was seated as the only black member of the jury. The court held that a presumption exists in favor of the proper use of peremptory challenges which is rebuttable on a showing that a pattern has developed in a given case where several prospective jurors who have been challenged peremptorily are members of a particular ethnic group and there is a likelihood that they were challenged because of their membership in such group. Once rebutted, the court held that the burden shifted to the prosecution to demonstrate that the group members were not excluded because of their group affiliation. There having been no such showing in that case, the court reversed the convictions of the defendants on the ground that they were not tried by a jury of their peers as guaranteed by article 12 of the Declaration of Rights of the Massachusetts Constitution.
 Section 1 of article I of the New York Constitution provides that, "[n]o member of this state shall be disenfran *277 chised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers”. This provision is virtually identical to article 12 of the Massachusetts Declaration of Rights. It does not require that each randomly selected jury be mathematically representative of the various ethnic groups in the community, so long as the array from which the jury was picked was randomly selected and was so representative. However, this court finds the reasoning of the courts of California and Massachusetts in interpreting similar constitutional provisions both rational and persuasive. Accordingly, it holds that in New York State the use of peremptory challenges systematically to exclude jurors solely by reason of their sex, race, color, creed or national origin, where the persons excluded are affiliated with the same ethnic group as the defendant, deprives him of a trial of his peers as guaranteed by section 1 of article I of the New York Constitution.
Having established this principle, we turn now to the facts in the instant case. The District Attorney exercised a total of six peremptory challenges. The defendants, in support of their motion, contended that five of the six jurors thus excluded were members of the Jewish faith. Their contention was based upon the juror’s names in each instance, except with respect to one juror who stated on the voir dire that he was a member of a synagogue. They further asserted, also on the basis of the jurors’ names, that none of the regular or alternate jurors who were sworn is Jewish. Confronted with these factual allegations, the court summoned to chambers the four excused jurors whose religious preference was unknown. After advising them of the purpose of the inquiry, and that they need not respond if they did not choose to, they were each asked separately what their religious preference was. Three stated that they were Jewish and the fourth that she was not. Thus, a total of four prospective jurors who were members of the Jewish faith were all excused by the District Attorney, with the apparent result, according to defendants, that the jury as constituted has no one on it who is Jewish.
While the defendants are unhappy with the present composition of the jury for this reason, they did not challenge the array on the ground that the apparently small number of Jewish persons on the venire indicated that it was not representative of the community. Instead, their claim is limited to the action of the District Attorney in challenging four other *278 wise eligible Jewish jurors. However, the court cannot conclude on the basis of only four peremptory challenges by the District Attorney of persons who it was subsequently ascertained were Jewish that the prosecutor was systematically excluding persons of the Jewish faith from this jury. The number is simply too small to warrant that conclusion. This is particularly true in view of the fact that in the case of three of the four, the only information the District Attorney had which could lead him to conclude that they were Jewish was their names. Nor can the court determine with any degree of certainly, solely on the basis of their names, what the religious preferences of the sworn jurors are. While this could be determined by an inquiry by the court similar to that used in the case of the excused jurors, the very making of the inquiry, with the requisite explanation of its purpose, would itself be prejudicial. For all of the foregoing reasons, the motion for a mistrial is denied.