THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STANLEY PAYNE, Defendant-Appellant.

First District (3rd Division)     No. 79-1013

Opinion filed May 19, 1982.

James J. Doherty, Public Defender, of Chicago (Kathleen O'Donovan and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Mark A. Graf, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Stanley Payne, was found guilty by a jury and sentenced on three counts of aggravated battery and one count of armed violence. The jury was unable to reach a verdict as to other counts against him. Defendant, who is black, contends that, over his objections, the prosecutor systematically used peremptory challenges during the *voir dire* examination of the jurors to exclude blacks from the jury solely because they were blacks.[1] It is defendant's position that he was denied the type of fair trial guaranteed under the sixth amendment of the United States Constitution because the State affirmatively frustrated his right to a jury drawn from a fair cross section of the community. We reverse the convictions and remand the case for a new trial.

We believe this case presents broader issues than those which surface from a mere factual recitation of what occurred. This case involves the proper roles of the State, the prosecuting attorney and the court itself in a criminal trial.

Initially, we must not overlook the fact that in a criminal trial, it is the State that is the plaintiff throughout the entire proceeding. Thus, if a State's Attorney, assistant State's Attorney, jury commissioner or prosecuting attorney effectively practices racial discrimination, it is not just the individual officer or attorney who is racially discriminating against the accused, but rather the State itself. With this in mind, the threshold question in this case is not whether on *voir dire* a prosecuting attorney can exclude blacks from serving as jurors solely because they are blacks, but whether the State itself can so exclude blacks. We hold that such acts by the State are repugnant to the sixth amendment of the Constitution of the United States.

---

[1] Defendant also contends that the State failed to prove him guilty beyond a reasonable doubt. We have decided that issue this same day pursuant to Supreme Court Rule 23 (88 Ill. 2d R. 23).

A defendant's right to an impartial jury under the sixth amendment gives him a constitutional entitlement to a jury drawn from a fair cross section of the community. (*Taylor v. Louisiana* (1975), 419 U.S. 522, 528-30, 42 L. Ed. 2d 690, 696-98, 95 S. Ct. 692, 696-97.) We believe that the State may not at any stage of the jury selection process affirmatively frustrate this entitlement by systematically excluding blacks from the jury solely because they are blacks. In *Taylor*, the Court stated:

> "Our inquiry is whether the presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions.
>
> ＊ ＊ ＊
>
> We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. *Duncan v. Louisiana*, 391 U.S., at 155-156. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system. Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial." 419 U.S. 522, 526-30, 42 L. Ed. 2d 690, 695-98, 95 S. Ct. 692, 695-97.

■■ Although the *Taylor* case involved the exclusion of a discrete group during the venire selection rather than during the *voir dire* selection of jurors, we see no rational difference warranting the allowance of racial discrimination by the State in the latter instance but not the former. Obviously, the very purpose of refusing to tolerate racial discrimination in the composition of the venire is to prevent the State's systematic exclusion of any racial group in the composition of the jury itself. The desired goal of interaction of a cross section of the community does not occur within the venire, but rather, is only effectuated by the petit jury that is selected and sworn to try the issues. It follows that the systematic exclusion of prospective jurors solely because of their race is equally invidious and unconstitutional at any stage of the jury selection, *i.e.*, from the time the general jury list is prepared by the jury commissioner until the jury is

actually selected and sworn. If we were to hold otherwise, the constitutional right to a jury drawn from a fair cross section of the community could be rendered a nullity through the use of peremptory challenges. We would have to resort to casuistry to hold that a State may do at the *voir dire* selection of the jury what it is constitutionally precluded from doing at the venire selection of the jury.

■■ Our holding that the State may not exclude blacks from the jury during the *voir dire* solely because they are blacks does not mean that any individual black is insulated from the use of peremptory challenges to exclude any individual. Nor does our holding mean that a defendant is entitled to a petit jury proportionately representing every group in the community or that the petit jury must include blacks because the defendant is black or for any other reason. What it does mean, however, is that a defendant is constitutionally entitled to a petit jury that is as near an approximation of the ideal cross section of the community as the process of random draw and constitutionally acceptable procedures permit. It also means that the State may not affirmatively frustrate this constitutional entitlement.[2]

■■ We next look to the role of the prosecuting attorney in a criminal case. The duty of the prosecuting attorney is to seek justice, not merely to convict. (ABA Standards, The Prosecution Function 1.1(c) (1974).) Thus, the prosecuting attorney must be a champion for justice first and secondarily an advocate seeking conviction. (ABA Code of Professional Responsibility EC 7—13 (1979).) When a prosecutor excludes blacks from the jury solely because they are blacks, he is not primarily seeking justice.[3] He is only seeking to convict. This is a clear violation of his professional duty.

It is worth reflecting on the fact that the framers of both our Federal and State constitutions intended to give the accused an "inestimable safeguard against the \* \* \* overzealous prosecutor" by providing an accused with the right to be tried by a jury of his peers. (*Duncan v. Louisiana* (1968), 391 U.S. 145, 156, 20 L. Ed. 2d 491, 499, 88 S. Ct. 1444, 1451.) The

---

[2] We intend that our holding and the principles which we apply in this case be applicable to any discrete group which may be the subject of the kind of discrimination discussed here. *E.g., Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692 (systematic exclusion of women from jury panels); *Hernandez v. Texas* (1954), 347 U.S. 475, 98 L. Ed. 866, 74 S. Ct. 667 (systematic exclusion of Mexicans from service as jurors); *Commonwealth v. Soares*, 377 Mass. 461, 489 n.35, 387 N.E.2d 499, 517 n.35 ("The attempt \* \* \* to strike all veniremen of Italian descent from the jury would \* \* \* fall within this area of prohibited practice. *Cf. Commonwealth v. Graziano*, 368 Mass. 325, 331 N.E.2d 808 (1975)"); *People v. Kagan* (1979), 101 Misc. 2d 274, 420 N.Y.S.2d 987 (under trial court ruling, if prosecutor systematically excludes Jewish prospective jurors solely because they are Jewish, it would deprive Jewish defendant of his right to a trial by his peers).

[3] To determine whether justice is being sought, we must bear in mind that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 42 L. Ed. 2d 690, 697, 95 S. Ct. 692, 697.

right to a peer jury is effectively diminished in any case if the overzealous prosecutor is able by affirmative means to systematically exclude available and otherwise competent blacks from the jury solely because they are blacks. *Cf. Peters v. Kiff* (1972), 407 U.S. 493, 504-05, 33 L. Ed. 2d 83, 94-95, 92 S. Ct. 2163, 2169-70.

We next look to the role of the court itself in a criminal trial because the significance of a criminal trial goes beyond the truth or falsity of the accusation. A criminal trial is in reality a public event. (*Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 593, 65 L. Ed. 2d 973, 1000, 100 S. Ct. 2814, 2826 (Brennan, J., concurring).) The trial includes the ceremonial or ritual aspect, the appearance of justice, and the role of a free people in passing judgment. Thus, the whole society is represented at a criminal trial. That is why, with rare exception, criminal trials must be open to the public. See *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 581, 65 L. Ed. 2d 973, 992, 100 S. Ct. 2814, 2830; see also *Taylor*, 419 U.S. 522, 530, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 697; Younger, *Unlawful Peremptory Challenges*, 7 A.B.A. J. Litigation 23, 24 (1980).

If we are going to insist, and we must, that criminal trials be open to the public, we must be ever solicitous that those in attendance witness a system of justice in its truest sense and not a system of *de facto* racial discrimination. In this regard, we, as judges and defenders of our legal system, can ill afford to delude ourselves into believing that those in attendance at a criminal trial do not appreciate the difference between trial tactics used primarily to seek justice and racially discriminatory trial tactics used solely to convict. When by affirmative means blacks are systematically excluded from serving on a petit jury solely because they are blacks, the harm is not restricted to the defendant. There is also harm to the jury system, to the excluded jurors, to the community at large, to the law as an institution, and to the democratic ideal reflected in the processes of our courts. *Cf. Ballard v. United States* (1946), 329 U.S. 187, 195, 91 L. Ed. 181, 186, 67 S. Ct. 261, 265.

Thus, we must bear in mind that a criminal trial is more than merely a means of meting justice. The trial is also an avenue for fulfilling the notion deeply rooted in the common law that "justice must satisfy the appearance of justice." (*Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 594, 65 L. Ed. 2d 973, 1001, 100 S. Ct. 2814, 2827 (Brennan, J., concurring), quoting *Levine v. United States* (1960), 362 U.S. 610, 616, 4 L. Ed. 2d 989, 995, 80 S. Ct. 1038, 1042.) Plainly, the appearance of justice is not fulfilled if the trial court acquiesces in, condones or fails to preclude attempts by the prosecuting attorney to exclude blacks from the jury solely because they are blacks. The trial court cannot sit idly by in such instances, because it has a duty to see that the appearance of justice is

demonstrated in the criminal trial that is taking place before those in attendance. The fundamental concepts of our society and our system of laws and government demand no less.

■■ In this regard, when it reasonably appears to the trial court that the prosecuting attorney is systematically excluding blacks from the jury solely because they are blacks, any trial procedure which allows such racial discrimination must yield to the paramount constitutional demand of the sixth amendment. Specifically, at this point, the rule that no reason need be given for a peremptory challenge must give way to the constitutional imperative. The statute allowing peremptory challenges (Ill. Rev. Stat. 1979, ch. 38, par. 115—4(e)) is "not invalid on its face, but in these limited circumstances it would be invalid as applied if it were to insulate from inquiry a presumptive denial of the right to an impartial jury." (See *People v. Wheeler* (1978), 22 Cal. 3d 258, 281 n.28, 583 P.2d 748, 765 n.28, 148 Cal. Rptr. 890, 906 n.28.) The constitutional demand must control because the State's peremptory challenge is a statutory procedure and not a constitutional necessity (*Stilson v. United States* (1919), 250 U.S. 583, 586, 63 L. Ed. 1154, 1156, 40 S. Ct. 28, 29-30) or even a common law imperative.[4] When a constitutional right conflicts with a statutory procedure, the constitutional right must prevail. (*Swain v. Alabama* (1965), 380 U.S. 202, 244, 13 L. Ed. 2d 759, 786, 85 S. Ct. 824, 848 (Goldberg, J., dissenting).) No State is at liberty to impose upon one charged with a crime a discrimination in its trial procedure which the Constitution forbids. *Peters v. Kiff* (1972), 407 U.S. 493, 506, 33 L. Ed. 2d 83, 95, 92 S. Ct. 2163, 2170 (White, J., concurring), quoting *Hill v. Texas* (1942), 316 U.S. 400, 406, 86 L. Ed. 1559, 1563, 62 S. Ct. 1159, 1162.

---

[4] We note that in 1305 in England, the Crown's right to peremptory challenge was abolished. (33 Edw. 1. c.2 (1305).) Since that time, peremptory challenges may be exercised only by the defendant. Also, since 1305, except for challenges for cause, the Crown can only require jurors whom it wishes to challenge to stand aside from the panel until the defendant has exercised all his challenges. Then, if a jury has not been selected, the jurors who have stood aside will be used unless the Crown can challenge them for cause. (*Swain v. Alabama* (1965), 380 U.S. 202, 243 n.4, 13 L. Ed. 2d 759, 785 n.4, 85 S. Ct. 824, 848 n.4 (Goldberg, J., dissenting).) Specifically, 26 Halsbury's Laws of England, par. 626 (4th ed. 1979), provides:

> "The Crown may challenge for cause only, but may also direct any person whose name is called to stand by until the panel has been called over and exhausted, and will not be put to assign cause until it appears that there will not be a full jury without recourse to that person."

It should be noted that the procedure of having a juror stand aside *is not a peremptory challenge* because, even when the procedure is employed by the Crown, which is seldom, the juror who has been stood aside may be actually seated as a juror after the defendant has exercised all his challenges. Specifically, 26 Halsbury's Laws of England, par. 624 (4th ed. 1979) states: "The Crown has no right to make peremptory challenges."

This historical analysis is significant here because in 1819, at the first legislative session, Illinois adopted as its laws the common law of England and all acts of Parliament (with three exceptions not relevant here) as they existed prior to the fourth year of James the First (March 24, 1606-March 23, 1607). (*Hardesty v. Mitchell* (1922), 302 Ill. 369, 371, 134 N.E. 745,

▪▪ Accordingly, we hold that when it reasonably appears to the trial court, either by its own observation or after motion by the defendant, that the prosecuting attorney is using peremptory challenges to systematically exclude blacks from the jury solely because they are blacks, the court should require the prosecutor to demonstrate, by whatever facts and circumstances exist, that blacks were not being systematically excluded from the jury solely because they were blacks. At this stage, the burden of demonstrating that the Constitution was not being violated is upon the prosecution. Also, at this stage, the trial court should not employ any presumption that the Constitution is not being violated. Once it reasonably appears to the trial court that the accused is being affirmatively denied an impartial jury as required under the sixth amendment, there is no reason to presume that the State is not affirmatively violating the accused's constitutional entitlement.

If the trial court finds that as to any of the questioned challenges the State has not sustained its burden of demonstrating that it was not excluding blacks from the jury solely because they were blacks,[5] the court must then conclude that the jury as constituted at that point fails to comply with the fair cross section requirement of the Constitution, and it must dismiss the jurors thus far selected. Also, it must quash any remaining venire, since the accused is entitled to a random draw from an entire venire, not one that has been partially or totally stripped of a cognizable group by unconstitutional means. Upon such dismissal, a different venire should be drawn and the jury selection process may begin again.[6] *Commonwealth v. Soares* (1979), 377 Mass. 461, 491, 387 N.E.2d 499, 518; *People v. Wheeler* (1978), 22 Cal. 3d 258, 282, 583 P.2d 748, 765, 148 Cal. Rptr. 890, 906.

In the present case, the State contends that "if the prosecution did use its peremptory challenges to exclude blacks, such use is permissible." The

---

746; *Lasier v. Wright* (1922), 304 Ill. 130, 135, 136 N.E. 545, 546-47; see Ill. Rev. Stat. 1979, ch. 1, par. 801; Ill. Ann. Stat., ch. 1, par. 801, Historical Note, at 27 (Smith-Hurd 1980).) Since peremptory challenges by the Crown were abolished in 1305, peremptory challenges by the State were not part of the common law of Illinois as adopted from England, but rather were statutorily created, and today they are allowed solely as a statutory privilege. (Ill. Rev. Stat. 1979, ch. 38, par. 115—4(e).) Thus, the State's right to make peremptory challenges in Illinois is neither a common law imperative nor a constitutional right.

[5] Although decisions of this nature are difficult, we are convinced that trial judges, given their presence in the courtroom during the entire proceeding and their ability to observe all facets of the *voir dire* selection, their experience with *voir dire* examinations, and the benefit of their judicial trial experience, should be able to distinguish bona fide reasons for exclusion from contrived declarations of motives. Moreover, if errors are made in this regard, they are subject to review as are other errors that occur during trial.

[6] We note that there is no valid double jeopardy claim which a defendant may raise after such a declaration of mistrial. See *Crist v. Bretz* (1978), 437 U.S. 28, 38, 57 L. Ed. 2d 24, 33, 98 S. Ct. 2156, 2162 (no jeopardy attaches until the jury is empaneled and sworn); *People v. Shields* (1979), 76 Ill. 2d 543, 546, 394 N.E.2d 1161, 1163; see also Ill. Rev. Stat. 1979, ch. 38, par. 3—4(a)(3).

State defends this pernicious practice by relying upon *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. In *Swain*, the opinion of the court[7] held that the striking of blacks from the jury in that case, a State criminal trial, did not violate the equal protection clause of the fourteenth amendment of the United States Constitution. The opinion states: "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." (380 U.S. 202, 222, 13 L. Ed. 2d 759, 773, 85 S. Ct. 824, 837.) The practice of removing blacks from the jury in that case was found insulated from inquiry "on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged." (380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) However, the court stated that it would consider an equal protection challenge to that procedure in some circumstances. The equal protection challenge might occur when "in case after case" the prosecutor "is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries." (380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) The opinion of the court in *Swain* also states: "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." (380 U.S. 202, 220, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 836.) However, later in the opinion, the court states: "[If] it would appear that the purposes of the peremptory challenge are being perverted * * * the presumption protecting the prosecutor may well be overcome." (380 U.S. 202, 224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.) It follows that the court in *Swain* recognized that peremptory challenges could be controlled by the trial court if it appeared to the trial court that they were being used to violate the constitutional rights of the accused.

It has been almost 18 years since *Swain* was decided.[8] During that time, two cases have been decided by the United States Supreme Court which we believe cause the present case and similar cases to be distinguished from *Swain*. In 1968, the court held, for the first time, that the sixth amendment of the Constitution of the United States as it relates to

[7] Four Justices joined in the opinion of the court, and two Justices specially concurred; Justice Goldberg dissented, with Chief Justice Warren and Justice Douglas joining in the dissent.

[8] We note, as a point of information only, what is stated in *Commonwealth v. Soares* (1979), 377 Mass. 461, 476-77 n.11, 387 N.E.2d 499, 510 n.11: "Since its release in 1965, *Swain* has been the subject of extensive and biting criticism. [Citations.]"

jury trials applies to State criminal trials. (*Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444.) Seven years later, the court decided *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692. In *Taylor*, the court stated: "The background against which this case must be decided includes our holding in *Duncan v. Louisiana* [citation] that the Sixth Amendment's provision for jury trial is made binding on the States." (419 U.S. 522, 526, 42 L. Ed. 2d 690, 696, 95 S. Ct. 692, 696.) The *Taylor* court then held: "We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation." (419 U.S. 522, 530, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 697-98.) In reaching its decision, the *Taylor* court reviewed and relied upon cases that arose subsequent to *Swain*. For example, the court discussed *Carter v. Jury Com.* (1970), 396 U.S. 320, 330, 24 L. Ed. 2d 549, 558, 90 S. Ct. 518, 524, noting that in *Carter* "the Court observed that the exclusion of Negroes from jury service because of their race 'contravenes the very idea of a jury—"a body truly representative of the community".' [Citation.]" 419 U.S. 522, 528, 42 L. Ed. 2d 690, 696-97, 95 S. 692, 696.

We believe that *Duncan* and *Taylor* together have significantly changed the law from the time *Swain* was decided, vis-a-vis the sixth amendment right of an accused in a State trial to a jury drawn from a fair cross section of the community and the prohibition of the State's affirmative frustration of that right. At the time *Swain* was decided, the sixth amendment had not yet been recognized as applicable to State criminal trials, and the accused's sixth amendment right to a jury drawn from a fair cross section of the community and the prohibition of the State's affirmative frustration of that right were neither raised nor discussed in *Swain*. Moreover, the fact that the law has changed in this area is demonstrated by the United States Supreme Court's holding that "the Sixth Amendment right to a petit jury, made applicable to the States * * * in *Duncan v. Louisiana* [citation], does not apply to state trials that took place before the decision in *Duncan*." *Peters v. Kiff* (1972), 407 U.S. 493, 496, 33 L. Ed. 2d 83, 90, 92 S. Ct. 2163, 2165.

Accordingly, *Swain* does not apply to an accused's right not to have the State affirmatively frustrate his sixth amendment right to a jury drawn from a fair cross section of the community, which is the constitutional issue underlying a decision in this case.[9] We therefore apply *Taylor* and its

---

[9] Plainly, different factors and considerations are used to determine whether one's constitutional right to a jury drawn from a fair cross section of the community has been violated (*Taylor*) and whether one's constitutional right to equal protection has been violated (*Swain*; see generally Karasik, *Equal Protection of the Law Under The Federal and Illinois Constitutions: A Contrast In Unequal Treatment*, 30 De Paul L. Rev. 263 (1981)). On this point, Justice Holmes has characterized the equal protection argument as "the usual last resort of constitutional arguments," reflecting its narrow appeal to the courts. *Buck v. Bell* (1927), 274 U.S. 200, 208, 71 L. Ed. 1000, 1002, 47 S. Ct. 584, 585.

rationale to this case rather than *Swain*, and we conclude that the sixth amendment precludes the State, *i.e.*, the prosecuting attorney, from affirmatively frustrating the right of the accused to a jury drawn from a fair cross section of the community by utilizing peremptory challenges to exclude blacks from the jury solely because they are blacks.[10]

The State's position in the present case is untenable for additional reasons. The State argues that pursuant to *Swain*, the essential nature of the peremptory challenge is that it is *never* subject to the court's control. We disagree. In *Swain*, the court stated that it would consider an equal protection challenge to the peremptory challenge if "the purposes of the peremptory challenge are being perverted." (380 U.S. 202, 224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.) Thus, the *Swain* court recognized that peremptory challenges could be controlled by the trial court if it appeared to the trial court that they were being used to violate the constitutional rights of the accused. The State also argues that pursuant to *Swain*, peremptory challenges are *without exception* insulated from inquiry in each case because there is a presumption that the prosecutor is acting on acceptable terms. We disagree. In *Swain*, the court held that if the purposes of the peremptory challenge are being perverted, "the presumption protecting the prosecutor may well be overcome." (380 U.S. 202, 224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.) Here, we hold that when it reasonably appears to the trial court that the accused is affirmatively being denied an impartial jury as required under the sixth amendment, there is no reason to presume that the State is not affirmatively violating the accused's constitutional entitlement.

The State also relies upon *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809. Subsequent to *Harris*, the following cases were decided: *People v. Butler* (1970), 46 Ill. 2d 162, 263 N.E.2d 89, *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409, *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731, and *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d

---

[10] In the present case, defendant is black. However, it is not necessary that the defendant belong to the excluded identifiable group in order to challenge the State's action. In *Taylor*, the State insisted that the defendant, a male, had no standing to object to the State's affirmative and systematic exclusion of women from the jury. The court held that because women were affirmatively and systematically excluded from the jury by the State, the male defendant was deprived of his constitutional right to a trial by a fair cross section of the community. (419 U.S. 522, 533, 42 L. Ed. 2d 690, 699, 95 S. Ct. 692, 699.) In *Peters v. Kiff* (1972), 407 U.S. 493, 33 L. Ed. 2d 83, 92 S. Ct. 2163, the defendant was white. His conviction was reversed, and the case was remanded to determine whether the State had affirmatively and systematically excluded blacks from the jury. The court stated: "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." 407 U.S. 493, 503-04, 33 L. Ed. 2d 83, 94, 92 S. Ct. 2163, 2169.

1046. *Harris* is an alleged equal protection violation case. *Butler* is also an alleged equal protection violation case and was decided on the basis of *Swain*. *Powell* was decided on the basis of *Swain*. *King* was decided partly on the basis that the defendant moved to dismiss the jury after it had been selected and therefore the motion was filed too late. Also, the court in *King* based its decision on *Swain* and *Butler*. In *Gaines*, the court stated, "[T]he defendant did not raise this issue until all the jurors had been sworn. Moreover, he failed to make a record which would show that the veniremen who were peremptorily challenged by the State were black. Such a showing is required * * *." (88 Ill. 2d 342, 359, 430 N.E.2d 1046, 1054.) Significantly, all of these cases except *Gaines*, which is distinguished for other reasons, were decided prior to *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, and the sixth amendment was not discussed in any of them. Thus, we do not find these cases applicable for the same reason *Swain* is not applicable.

The State also relies upon the following appellate court cases: *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448, *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8, and *People v. Fort* (1971), 133 Ill. App. 2d 473, 273 N.E.2d 439. We have read and reviewed each of these cases and similar appellate court cases, including *People v. Belton* (1982), 105 Ill. App. 3d 10, *People v. Mims* (1981), 103 Ill. App. 3d 673, 431 N.E.2d 1126, *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 430 N.E.2d 243, *People v. Clearlee* (1981), 101 Ill. App. 3d 16, 427 N.E.2d 1005, *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 427 N.E.2d 840, *People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511, *People v. Allen* (1981), 96 Ill. App. 3d 871, 422 N.E.2d 100, *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029, *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117, and *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330. In these cases, relief was denied either on the basis of an insufficient record or on the basis of *Swain*. Thus, they are distinguishable from the present case, where the record is sufficient and *Swain* is not applicable.

In this case, seven blacks were available to be seated as jurors during the *voir dire*. The prosecutor used peremptory challenges to exclude six of the blacks. After each black was excluded by the prosecutor, defense counsel objected, protesting that the prosecutor was systematically excluding blacks solely because they were blacks. Each objection was summarily overruled. After the prosecutor had excluded six of the blacks and after defense counsel objected each time that the prosecutor was systematically excluding the blacks solely because they were blacks, the prosecutor allowed the remaining black to become a juror. In total, the prosecutor exercised eight peremptory challenges. Six of the eight challenges were used to eliminate six of the seven blacks.

The record establishes that the blacks who were excluded are

factually heterogeneous. The information relating to their background appears in the record by virtue of the trial court's questioning of the prospective jurors as to their name, address, occupation, marital status, whom they lived with, whether they had children or siblings, length of time at their current employment, whether they had ever been the victim of a crime and whether they had any connection with law enforcement.

The record further evinces that as compared to the jurors who were seated, the single distinguishing characteristic that the excluded blacks shared is their race. This becomes plainly evident when the factual backgrounds of the excluded blacks are compared with those of the jurors who were seated.[11] On appeal, the State argues that since the excluded blacks were not married, they had a distinguishing characteristic other than their race. However, during oral argument, the attorney representing the State on appeal admitted that he discovered that fact for the first time only after he screened the appellate court record very carefully while especially looking for some common element relating to the excluded blacks. Moreover, two of the jurors who were seated were also unmarried, but they were not blacks. We conclude that the State's contention on this point is implausible and clearly untenable.

The State also argues that because one black was seated on the jury the State did not affirmatively deny defendant a fair cross section of the community on the jury. This argument is unavailing because this case involves the exclusion of all the black jurors by the State *before* the last available black juror was allowed to be seated. Systematic and affirmative racial exclusion of available black jurors by the State which results in only one black being seated as a juror is no less evil and no less constitutionally prohibited than the same procedure which results in the total exclusion of blacks. We are not unmindful that some attorneys may leave a token black on the jury after they are assured that there are no more blacks available to be seated. This type of practice does not lessen the unconstitutionality of the State's initial exclusion of blacks from the jury solely because they were blacks.

■■ Plainly, the facts and circumstances in this case demand the conclusion that it should have reasonably appeared to the trial court that the prosecutor was using peremptory challenges to systematically exclude blacks from the jury solely because they were blacks. At that stage, the trial court should have required the prosecutor to demonstrate, by whatever facts and circumstances existed, that blacks were not systematically excluded solely because they were blacks. The failure of the trial court to impose such a requirement on the prosecutor at that stage was error, and the error is of such magnitude that the convictions must be reversed and

---

[11] We have not set forth the factual comparison because to do so would lengthen the opinion needlessly.

the case remanded for a new trial. There are some constitutional rights so fundamental to a fair trial that when they are violated the transgression cannot in good conscience be labeled harmless. The right to a fair and impartial jury as guaranteed by the sixth amendment, which includes the right to a jury drawn from a fair cross section of the community and the corresponding right not to have the State affirmatively frustrate that entitlement, is one of those rights.

Accordingly, the convictions are reversed, and the case is remanded for a new trial.

Reversed and remanded.

WHITE, P. J., and McGILLICUDDY, J., concur.