**Michael SIMPSON, a/k/a Woods, Petitioner,**

v.

**COMMONWEALTH OF MASSACHUSETTS, Respondent.**

**Civ. A. No. 81–1193–S.**

United States District Court, D. Massachusetts.

July 20, 1984.

Findings, Rulings and Order Oct. 30, 1985.

Robert A. Murphy, Boston, Mass., for petitioner.

Michael W. Dingle, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM AND ORDER ON AMENDED MOTION TO DISMISS

SKINNER, District Judge.

This is a petition for a writ of habeas corpus filed by Michael Simpson, a/k/a Woods ("Simpson"). Simpson is currently an inmate at the Massachusetts Correctional Institution in Walpole, Massachusetts. The Commonwealth has answered the petition and moved to dismiss on grounds of failure to exhaust, waiver, and failure to state a claim upon which relief can be granted. The petitioner, by his court appointed counsel, has moved to amend his petition to delete unexhausted claims, has opposed the motion to dismiss, and has asked the court to rule on the merits of the petition and issue the writ.

1. *Background Issues.*

On January 19, 1977, Simpson, a black man, was convicted in Suffolk Superior Court of rape, and of assault with intent to rape. The victim was a white woman. The court sentenced him to a term of 15 to 25 years at M.C.I. Walpole for the rape and to a from-and-after term of 5 to 10 years at Walpole for the assault with intent to rape. Simpson filed a timely assignment of errors, including *inter alia* (1) the judge's

failure to disqualify himself; (2) the judge's allegedly inappropriate comments on the presentation by the prosecutor; (3) the unfair tone generally created by the judge at trial. The Appeals Court of Massachusetts rejected all of Simpson's claims, *Commonwealth v. Simpson*, 6 Mass.App. 856, 373 N.E.2d 362 (1978), and the Supreme Judicial Court denied further appellate review, *Commonwealth v. Simpson*, 375 Mass. 789 (1978). On March 26, 1979, Simpson filed a motion for a new trial, *pro se*. The motion was based (1) on the prosecutor's allegedly improper use of his peremptory challenges in order to exclude blacks from the jury, and (2) on prejudice to the defendant resulting from a side bar discussion allegedly within the hearing of the jury pertaining to the defendant's use of aliases. The motion was denied, and was denied again on appeal to the Appeals Court of Massachusetts. *Commonwealth v. Michael Woods*, 10 Mass.App. 836, 406 N.E.2d 1054 (1980). The Supreme Judicial Court denied further appellate review on September 30, 1980. *Commonwealth v. Michael Woods*, 380 Mass. 939 (1980). The petitioner filed his petition for habeas corpus on May 11, 1981. The petition is roughly drafted, and raises a number of issues. The court appointed counsel for the petitioner has moved to amend the petition by deleting two paragraphs which raise issues which the state courts have not considered. This motion is ALLOWED. The remaining paragraphs, 12B and 12D, raise, in substance, the following issues:

(a) Petitioner's right to a fair trial was denied by the action of the prosecutor in using his peremptory challenges to remove all eligible blacks from the jury;

(b) Petitioner's right to a fair trial was denied when the jury overheard remarks at a side bar conference at his trial, and his counsel failed to bring the matter to the court's attention.

(c) Denial of due process in the hearing on the petitioner's motion for a new trial in Superior Court.

II. *Exhaustion of Remedies.*

A habeas petitioner must show that he has exhausted his state remedies as to all of the issues raised in his petition. If a petition includes issues which have not been presented to the state courts, I must dismiss it in its entirety. *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). In order to exhaust a claim, a petitioner must present the substance of the claim to the state courts. It is not necessary that the petitioner highlight the claim in his presentation to the state courts, and it is not necessary that the state courts actually address the issue. *Williams v. Holbrook*, 691 F.2d 3, 8–9 (1st Cir.1982). However,

> [F]or the substance of a claim to have been advanced before the state courts, the same legal theory must have been presented to them. It is not enough that a generalized objection invoking the rule of law now relied on in federal courts was advanced before the state courts.

*Id.* at 9. Additionally,

> It is not enough that all the facts necessary to support the federal claim were before the state courts ... or that a somewhat similar state law claim was made....

*Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Dougan v. Ponte*, 727 F.2d 199 (1st Cir.1984).

The petitioner challenged the prosecutor's alleged discriminatory abuse of peremptory challenges on his motion for new trial. The denial of this motion was ultimately appealed to the Supreme Judicial Court and upheld. In his brief on appeal of the denial of a new trial, the petitioner argued that under Massachusetts law, he was entitled to a new trial. The prosecution argued that under Massachusetts law he was not entitled to a new trial. As discussed hereinafter, it was absolutely clear that federal law did not entitle the defendant to a new trial. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In the unusual posture of this case, the petitioner need not return to the state courts to raise the issue of

whether or not the federal rule should be reexamined. This is not a case where the state courts should be given "a chance to mend their own fences and avoid federal intrusion". *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). In this case, if there is a fence that needs mending, it is a federal fence.

▇ In his argument on appeal, the petitioner argued that the judge had denied both state and federal due process in making his factual finding on the motion for a new trial that the jurors "could not possibly have heard what was happening at the side bar". This finding precluded extended argument as to whether or not that remark could have prevented the petitioner from receiving a fair trial and the Appeals Court did not rule on this question. The Supreme Judicial Court denied further appellate review. The prosecutor, however, cited federal law for the proposition that even if the jury had overheard the remark, the defendant would not have been deprived of a constitutional right. The state courts have had adequate opportunity to consider federal law on those issues.

The petitioner has duly exhausted his state remedies. The respondent also argues that the petitioner waived the issues he now raises by failing to present them at trial. Were this true, under *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), I would be barred from reviewing these issues, in the absence of justification. There was ample justification for not raising the question of peremptory challenges, since at the time of trial both state and federal law were squarely against the petitioner's position. Moreover, the state courts exercised their discretion and fully heard the issues raised by the present petition despite the procedural default. Not only was the motion for a new trial entertained, but its denial was reviewed on appeal. The state appellate courts have had the "chance to mend their own fences and avoid federal intrusion". *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

III. *Preliminary Conclusions and the Need for Development of a Factual Record.*

A. *Unconstitutional Empanelment of the Jury.*

The petitioner alleges that he was tried and convicted by an all-white jury after the prosecutor used his peremptory challenges to remove all blacks from among the jurors. The petitioner asserts that this procedure violated the United States Constitution. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), holds squarely to the contrary. In *Swain*, the Supreme Court considered at length the purposes served by the peremptory challenge system and concluded

[W]e cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negros were removed from the jury or that they were removed because they were Negroes.

380 U.S. at 222, 85 S.Ct. 837. The petitioner has not alleged any circumstance which would allow this court to distinguish the holder of *Swain*. The facts of *Swain* were at least as troublesome as the facts of the present case. *Swain*, a 19-year old black, had been indicted for the rape of a 17-year old white woman, and had been convicted and sentenced to death by an all-white Alabama jury. 380 U.S. at 231.

The petitioner seeks to escape the force of *Swain* in two ways. First, he suggests that *Swain* rests only on equal protection grounds and the Court did not consider whether the jury selection violated due process. Although the Court does refer specifically to the equal protection clause, 380 U.S. at 221, 85 S.Ct. at 836, the Court's reasoning is equally applicable to considerations of due process. The Court's conclu-

sion in *Swain* followed from a review of the purposes served by the peremptory system "in a pluralistic society". 380 U.S. at 222, 85 S.Ct. at 837. The Court found that the system serves to guarantee

> not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held.

380 U.S. at 220, 85 S.Ct. at 835, citing *Hays v. Missouri,* 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1887).

Second, the petitioner suggests that given other alleged errors—some of which were raised in the state courts, but none of which are raised in the current petition—and given the racial sensitivity of the case, the exclusion of blacks from the jury contributed to a general atmosphere of prejudice which deprived the petitioner of due process. The Supreme Court rejected this style of analysis of the general "atmosphere" of the trial in *Rose v. Lundy,* 455 U.S. 509, 511–513, 519, 102 S.Ct. 1198, 1199–1200, 1203, because it defeats the purpose of the exhaustion principle by allowing the federal court to consider unexhausted claims. If I follow *Swain,* I cannot allow the prisoner's petition.

Recently, however, the Supreme Court has indicated that it is ready to reconsider *Swain.* Dissenting from the denial of certiorari in *McCray v. New York,* Justice Marshall stated:

> In the nearly two decades since it was decided, *Swain* has been the subject of almost universal and often scathing criticism. Since *every* defendant is entitled to equal protection of the laws and should therefore be free from the invidious discrimination of state officials, it is difficult to understand why several must suffer discrimination because of the prosecutor's use of peremptory challenges before any defendant can object.

461 U.S. 961, 103 S.Ct. 2438, 2440, 77 L.Ed.2d 1322 (1983) (emphasis in original) (footnote omitted). Justice Marshall noted that

For these reasons, some leading state courts have declined to follow *Swain* in interpreting state constitutional provisions. *State v. Crespin,* 94 N.M. 486, 612 P.2d 716 (1980); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1978), *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). *Cf. People v. Payne,* 106 Ill.App.3d 1034, 62 Ill.Dec. 744, 436 N.E.2d 1046 (1982).

103 S.Ct. at 2441. Justice Brennan joined Justice Marshall's dissent. Justice Stevens, in an opinion joined by Justice Blackmun and Justice Powell, agreed with

> Justice Marshall's appraisal of the importance of the underlying issue—whether the Constitution prohibits the use of peremptory challenges to exclude members of a particular group from the jury, based on the prosecutor's assumption that they will be biased in favor of other members of the same group.

103 S.Ct. at 2438. Justices Stevens, Blackmun and Powell voted with the majority to deny certiorari, because they believed that

> Further consideration of the substantive and procedural ramifications of the problem by other courts will enable us to deal with the issue more wisely at a later date.

*Id.*

Justices Marshall and Brennan believe *Swain* should be discarded. The three justices joining in Justice Stevens' opinion invite other courts to reconsider *Swain.* I do not read their invitation as limited to the state courts. Justice Stevens noted the absence of conflict within the federal system as a reason for denying certiorari. Without contrary decisions in lower courts, there can be no conflict within the federal system. While it is highly unusual for a district court to re-examine a Supreme Court opinion squarely on point, I read five Justices of the Supreme Court as inviting the lower federal courts to do just that. In this reading, I follow Judge Nickerson of the Eastern District of New York who drew the *McCray* habeas petition. Nicker-

son ordered a new trial for McCray rejecting the holding of *Swain. McCray v. Abrams,* 576 F.Supp. 1244 (1983).

The facts in this case preclude disposition of this case on the ground that any error was harmless. Simpson was convicted on his alleged victim's testimony which, even if true, made out only the thinnest of rape cases. Ms. Porcari testified as follows at trial:

She met the defendant for the first time late on a Saturday evening while she was working at a radio station. He came in to visit an announcer whom she knew. The two found themselves in the same elevator at the end of the evening. Simpson walked the young woman home, even though she said she did not want his company. The two walked over ten blocks, passing a cab stand where there were several cabs and an all-night drug store where a police cruiser is often parked. Ms. Porcari did not take these opportunities to seek help. While they walked, she talked to him about her crush on an announcer at the radio station. When they got to her apartment, Simpson grabbed her key and opened the door. She would not go in, and sat on the doorstep and cried. He kept asking her whether she was going to sit outside all night and cry, or whether she was going to come in. Eventually, she went in. She performed oral sex on him after he threatened to hurt her. He did not hurt her, and in fact told her, "I won't f— you unless you want me to." They did not have intercourse that night, and she went to work at 9:00 the next morning, leaving him alone in her apartment.

She did not talk to anybody about the incident, and did not seek protection before returning to her apartment shortly after noon. She was surprised to find that Simpson was still in her apartment. The two listened to the radio and he forced her to have sex with him in her bedroom until about 2:00 p.m. She made lunch for him, and gave him a shirt to wear. When he left at about 9:00 p.m., he left his shirt for her to clean or send out. She spoke to him on the phone for about an hour at 4:00 a.m.

on Monday morning. She next talked to him on Thursday, after work. Over the phone, he threatened and cajoled her into letting him come over for his shirt. He came over, and she let him in through three locks. When he came in, she was talking on the phone, but didn't tell the person on the other end of the line that there was any problem. Simpson waited around for her to finish her conversation. Simpson then told her she was going to perform oral sex on him, and when she refused, he started to grab her hands. She ran to the front door and screamed. A fight ensued and eventually help arrived.

These facts allowed for different inferences about the voluntariness of Ms. Porcari's intercourse with Simpson. Racial prejudice could easily lead white jurors to draw inferences against the petitioner. According to the allegations of Simpson's habeas petition, the prosecutor used his peremptory challenges to eliminate all blacks from the jury.

The five justices of the Supreme Court invite re-examination of *Swain,* not necessarily its abandonment. The Court's arguments, in support of *Swain,* are powerful and still should command respect. If it is possible to do so, the courts should make some pragmatic comparison on the effect on trial practice of the rule in *Swain* and its opposite. Happily, in the courts of the Commonwealth of Massachusetts, we have the advantage of six years' experience with limitation of peremptory challenges which seek to exclude a discrete and identifiable segment of the community.

In *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979), the Supreme Judicial Court refused to incorporate the *Swain* rule into the Massachusetts constitution. The court viewed Article 12 of the Massachusetts Declaration of Rights as

proscribing ... the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.

387 N.E.2d at 515. The court first established a presumption of proper use of per-

emptory challenges, and then limited its scope as follows:

That presumption is rebuttable ... by either party on a showing that (1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership.

387 N.E.2d at 517 (footnote omitted).

Once the judge determines that the presumption has been rebutted, the burden shifts to the allegedly offending party to demonstrate, if possible, that the group members of disproportionately excluded were not struck on account of their group affiliation....[sic] "... [W]e rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories [sic] from sham excuses belatedly contrived to avoid admitting facts of group discrimination."

*Id.* (quoting *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978)). The Supreme Judicial Court followed *Wheeler* in fashioning a remedy in the event the trial judge finds that the use of peremptory challenges has been predicated on group affiliations:

"If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted. Accordingly, the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected. So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire—not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges. Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew."

387 N.E.2d at 518 (quoting *People v. Wheeler*). The prosecution shares this right to a representative jury under Massachusetts constitutional law. 387 N.E.2d 517, fn. 35.

Accordingly, I shall hold an evidentiary hearing on the petitioner's allegations and shall expect testimony to be offered on the impact of *Soares* on criminal trial practice in Massachusetts.

### B. *Prejudicial Remarks in the Jury's Hearing.*

The other event which the petitioner contends mandates a reversal of his conviction was a remark by the prosecutor during a bench conference. In discussing the proper way to refer at trial to the defendant, who had used several aliases in the past, the prosecutor said, "The FBI knows him as Woods". Petitioner insists that he heard this remark, and that given his proximity to the jury at the time, the jury must also have heard it and must have been prejudiced by it. This conference occurred just after the venire was first brought into the courtroom. The petitioner's trial counsel did not object at the time, but the possibility of prejudice was raised on motion for a new trial. The judge found that the jury "could not possibly have heard what was happening at the side bar".

State court evidentiary rulings may be questioned in federal habeas proceedings only when they render the trial "so fundamentally unfair as to constitute a denial of federal constitutional rights". *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir.) *cert. denied* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). The present case might be compared (1) to cases where aliases were included on an indictment, *e.g.*, *U.S. v. Cowden*, 545 F.2d 257, 267 (1st Cir.) *cert. den.*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *U.S. v. Miranda*, 494 F.2d 783, 788 (5th Cir.) *cert. den.*, 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974); *U.S. v. Skolek*, 474 F.2d 582, 586 (10th Cir.1973); *U.S. v. Wilkerson*, 456 F.2d 57, 59 (6th Cir.) *cert. den.*, 408 U.S. 926, 92 S.Ct. 2506, 33 L.Ed.2d 337 (1972); (2) to cases involving prejudicial remarks to the jury, *e.g.*, *U.S. v. Flaherty*, 668 F.2d 566,

592–598 (1st Cir.1981). These cases make clear that there is no *per se* rule requiring a new trial when the jury learns that the defendant has used aliases.

■ Even assuming that some members of the jury overheard the prosecutor's remark, this would not render the trial "so fundamentally unfair" as to require habeas relief. Nothing in the isolated remark compelled the jury to draw any particular inference about Simpson. Accordingly, I ALLOW the respondent's motion to dismiss as to these allegations.

### IV. *Conclusion.*

The petitioner's motion to amend is ALLOWED. The respondent's motion to dismiss is ALLOWED in part. The parties will appear for a pre-hearing conference on September 4, 1984 at 3:30 p.m. It is my intention to call expert witnesses on the operation of peremptory challenges in Massachusetts. If the parties intend to offer experts of their own, or if they have suggestions for court appointed experts, they will present the experts' names and qualifications at the pretrial conference.

### FINDINGS, RULINGS AND ORDER

Prior proceedings are outlined in my *Memorandum and Order on Amended Motion to Dismiss* dated July 20, 1984. The findings, rulings and conclusions contained therein are incorporated and restated herein. In summary, I concluded that the petitioner had exhausted his state remedies and that if there was constitutional error it was not harmless. Thereafter hearings were held on December 19, 1984 and January 25 and 31, 1985. The purpose of these hearings was twofold:

1. To determine if blacks had been excluded from the jury by racially biased exercise of peremptory challenges by the prosecution.
2. To determine the effect of the decision of the Supreme Judicial Court in *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (1979), which prohibits racially biased use of peremptory challenges, upon the prose-

cution of criminal cases in the Commonwealth of Massachusetts.

At these hearings evidence was presented from which I make the following findings of fact:

1. The petitioner, who is black, was tried in the Superior Court for Suffolk County for rape and assault with intent to rape of a white woman. The trial occurred in January, 1977 before the *Soares* case was decided.
2. Many defense lawyers observed that it was routine, if not invariable practice in Suffolk County, for the assistant district attorneys to challenge every black juror that they could when the defendant was black and a victim was white.
3. At the petitioner's trial, the prosecution challenged all of the black jurors selected for the panel, of which there were at least three and possibly as many as five.
4. The assistant district attorney cannot now remember why he challenged the black jurors, at least two of whom were women, but he in general challenges on the basis of "hunches", trying to get jurors who were employed, respectable, solid citizens of the type who would pay their bills.
5. One of the black jurors challenged by the prosecution was an electronic technician for the postal department. This juror testified at trial and gave the appearance of an eminently respectable payer of bills.

I conclude that the prosecutor's "hunches" were to the effect that black jurors would be less favorable to conviction than would white jurors; i.e., that he exercised his peremptory challenges on a racial basis. In Suffolk County at that time, without a rule to the contrary, I would have considered that to be virtually inevitable and to reflect no special opprobrium on the particular assistant district attorney.

On the basis of undisputed testimony from a number of distinguished defense lawyers I conclude that prior to *Soares* it

was the perception of most black defendants in Suffolk County that they could not get a fair trial. Since *Soares* that perception is less pronounced. The general atmosphere of trial for a black defendant has markedly improved. There has been no detriment to either the prosecution or the defense of criminal cases in the Commonwealth's courts as a result of the *Soares* decision.[1]

Since my memorandum of July 20, 1984, there have been significant developments on this subject. In *United States v. Leslie*, 759 F.2d 366, *reh'g en banc granted*, 761 F.2d 195 (5th Cir.1985), the Court of Appeals of the Fifth Circuit adopted a rule prohibiting racially discriminatory peremptory challenges as a matter of supervising control of federal trials, but not on constitutional grounds. In *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984), the Court of Appeals for the Second Circuit held that while the holding of *Swain v. Alabama* was conclusive on the subject of equal protection, racially motivated exercise of peremptory challenges was prohibited under the Sixth Amendment. The case was remanded to the district court, however, so that hearings could be held allowing the state prosecutor to offer evidence justifying the challenges on other grounds.

In *United States v. Campbell*, 766 F.2d 26 (1st Cir.1985), our Court of Appeals found that the district judge had followed a procedure for testing the prosecution's use of peremptory challenges that was at least as stringent as that required by *McCray v. Abrams, supra*. Accordingly, it did not have to face the legal issue.

The Commonwealth has called to my attention a Memorandum and Order of the Appeals Court denying an application for a certificate of probable cause to appeal a denial of a writ of *habeas corpus* in *Reddick v. Callahan*, No. 84–1588, October 30, 1984. While such orders are not published opinions of the court having binding force or precedential value, nevertheless this order reveals a concern of the court which I should address. *Reddick* raised the same issue as does the petitioner in this case. The court points out that the state courts which have rejected *Swain* have not made the ruling retroactive to cases in which judgment had become final prior to the announcement of the new ruling. *E.g., Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (1979).

In fact, however, every time a new constitutional rule is discovered it is applied retroactively in at least the case in which the rule is announced. The Supreme Court recognized this fact when it decided whether the rule in *Mapp v. Ohio* should be applied retroactively in *Linkletter v. Wallace*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Justice Clark, writing for the majority, noted that the Court was not considering pure prospectivity since the rule had already been applied to reverse Mapp's conviction. *Id.* at 622, 85 S.Ct. at 1733. In the context of federal *habeas corpus*, the discovery of a new constitutional rule of necessity applies that rule to a case in which judgment has become final, the case of the petitioner himself.

Retroactivity ordinarily is considered only in a *subsequent* case in which final judgment was entered before the announcement of the new rule. This was the posture of the instant case in the context of Massachusetts jurisprudence. Simpson's conviction became final prior to the decision in *Soares* and therefore the *Soares* rule was not applied retroactively to Simpson's case. The Massachusetts decision against retroactivity in a subsequent case is in line with federal law. *E.g., Linkletter v. Wallace, supra; Tehan v. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1965); *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42

---

**1.** I particularly inquired about the effect on the defense because the only case of racially biased challenges which I personally observed was that of a *white* defendant who challenged three black jurors because the prosecuting DEA officer was a black woman. Racially biased exercise of challenges is prohibited to both prosecution and defendant under *Soares*.

L.Ed.2d 790 (1975), in which the appropriate considerations were considered at length by a divided court, *viz.,* Justice Douglas' dissent at 420 U.S. at 34, 95 S.Ct. at 706.

With respect to this federal *habeas corpus* petition, however, the issue is not whether an announced rule is to be applied retroactively, but whether a new rule (new at least in this circuit) is to be announced and applied to the petitioner's case.

I see no reason why it should not be. The reasoning of the Second Circuit Court of Appeals in *McCray v. Abrams, supra,* is persuasive. As indicated in my memorandum of July 20, 1984, the petitioner was convicted on the thinnest of evidence, so there is no question of harmless error. There is a record in this case showing that the rule the petitioner seeks has worked well in Massachusetts since the *Soares* decision in 1979, with no disadvantage to either prosecution or defense.

■ Accordingly, I rule that the racially biased exercise of peremptory challenges by the prosecution fatally tainted the selection of the petitioner's trial jury in violation of his rights under the Sixth Amendment to the Constitution of the United States as made applicable to the states by the Fourteenth Amendment. I further rule that the error was not harmless and the petitioner has standing to prosecute this application.

Unless the Commonwealth gives the petitioner a new trial within ninety days, the writ shall issue.

Whether the rule of this case should apply retroactively to another similarly situated petitioner is a question which may be postponed to another day.